On December 7, 1977 the plaintiff, Mrs. Fannie Lou Williams, filed suit in the Circuit Court of Bibb County against the defendant, Cecil Crews Chevrolet-Oldsmobile, Inc., (Crews Oldsmobile) for fraud, misrepresentation, and breach of warranty, and against the defendant, General Motors, for breach of warranty. Both claims arose out of the sale of a 1977 Oldsmobile Cutlass Supreme. The case was tried before a jury which returned a verdict for Mrs. Williams against Crews Oldsmobile, in the amount of $30,000.00 and for Mrs. Williams against General Motors in the amount of $20,000.00. Crews Oldsmobile and General Motors filed motions for judgment notwithstanding the verdict or in the alternative for new trial. Crews Oldsmobile's motion was denied. A remittitur of the judgment against General *Page 913 
Motors to the amount of $2,500.00 was stipulated to by Mrs. Williams and General Motors and was granted by the trial court. Crews Oldsmobile filed this appeal on March 3, 1980. This Court determined that the judgment appealed from was not a final order and dismissed the appeal on July 22, 1980. The plaintiff then filed a Rule 60 (a) motion to correct clerical error or omission and/or to correct the record on appeal. The plaintiff also filed a supplemental record with this Court, showing that a final judgment had been entered. This Court granted the motion and reinstated Crews Oldsmobile's appeal. We affirm the judgment of the trial court.
On July 16, 1977, Mrs. Williams purchased a six cylinder Oldsmobile Cutlass Supreme from Crews Oldsmobile. The purchase culminated a series of visits by Mrs. Williams, her husband and their son to Crews Oldsmobile.
The evidence adduced at trial conflicted, but according to the Williamses' testimony the following events transpired. During the week of July 9, 1977 Mrs. Williams, her husband and their son visited Crews Oldsmobile and talked to Steve Crews, vice-president and employee of Crews Oldsmobile. The Williamses told Steve Crews at that time that they were interested in an eight cylinder car and he replied that he did not have one at that time. All three left and returned to Crews Oldsmobile later in the week and again told Steve Crews they were looking for an eight cylinder car. They test-drove an eight cylinder Monte Carlo, but left without making a purchase. The Williamses returned on July 16, 1977 intending to purchase the Monte Carlo. After some disagreement over its price, the Williamses, accompanied by Paul McCrary, a salesman of Crews-Oldsmobile, began looking through the lot for another car. Paul McCrary pointed out one car to the Williamses, but they rejected it because it did not have an eight cylinder engine. The Williamses both testified that they expressed again that they were not interested in buying a six cylinder car. Paul McCrary then showed them a new Cutlass Supreme, which had a six cylinder engine. After negotiating the price of this car with Steve Crews, Mrs. Williams purchased the car. The total price was $6,541.31, $2,635.00 being paid by check and $3,906.31 being allowed on the trade-in of another vehicle. She contends that if she had known this car had six cylinders, she would not have purchased it.
At the time of the sale, Mrs. Williams was given an odometer disclosure statement on which the word "eight" was written out in the space designating the number of cylinders. The document was signed by Steve Crews. Mrs. Williams also received a carbon copy of the application for title. In the space on that application for the number of cylinders the number "8" was typed. Cecil Crews, the president of Crews Oldsmobile, signed the application for title. Thus, both documents she received at the time of the sale showed the car to have eight cylinders.
Mrs. Williams did not discover that the vehicle had a six cylinder engine until she was given the window sticker several days after the purchase. Upon her discovery she called Crews Oldsmobile to complain. Subsequently Mrs. Williams encountered many problems with the car. It began "shaking and shimmying" and finally after several attempts at repair by Crews Oldsmobile and other mechanics in Tuscaloosa and Montgomery, it was discovered that there was a dent in the drive shaft. Mrs. Williams traded the vehicle for another on October 28, 1977.
Paul McCrary, however, testified that to his knowledge, engine size was never discussed by the Williamses while negotiating their purchase. Moreover, he stated that he showed the Williamses the sticker, which clearly showed the car to have six cylinders, and read off the standard equipment and the options of the vehicle prior to their purchase of it. Steve Crews similarly testified that the Williamses never mentioned engine size. He admitted filling out the odometer disclosure statement, and urged that when he wrote that the car had eight cylinders, he merely made a mistake. He *Page 914 
explained that this was probably due to the fact that 1977 was the first year that a six cylinder Cutlass had been built, and that he had not sold many. Cecil Crews, who typed and signed the application for title on which was typed that the car had eight cylinders, explained that the number "8" was a typographical error which had been corrected to be read "6." He stated that Mrs. Williams was given one copy and the original one was sent to the State of Alabama to prepare the certificate of title. The certificate of title clearly showed the car to have six cylinders. Crews Oldsmobile on appeal contends that the evidence was insufficient to support a verdict based on fraud.
The definition of legal fraud is found in Code of 1975, §6-5-101:
 Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud.
It has been held that whether the representations were made willfully, recklessly or mistakenly, in order to be actionable fraud there must be (1) a false representation, (2) the false representation must concern a material existing fact, (3) the plaintiff must rely upon that false representation, and (4) the plaintiff must be damaged as a proximate result. InternationalResorts, Inc. v. Lambert, Ala., 350 So.2d 391 (1977); Mathis v.Jim Skinner Ford, Inc., Ala., 361 So.2d 113 (1978).
Our review of the record convinces us that there was sufficient evidence, if believed by the jury, to support a finding in favor of Mrs. Williams based upon fraud. The testimony of Mrs. Williams, as previously related, was that she had repeatedly told Crews Oldsmobile that she wanted an eight cylinder car, that she was shown and sold a six cylinder; that she was given two documents at the time of the sale which falsely stated that the car had eight cylinders; that she relied on the implied and actual representations of Crews Oldsmobile that this car had eight cylinders; and that if she had known the car had only six cylinders, she would not have purchased it. Although the testimony presented by the defendant conflicted with that of the Williamses, the jury resolved the conflict in favor of the plaintiffs. The trial court then denied the defendant's motion for a new trial. That ruling strengthened the presumption of correctness which accompanies a jury verdict. A reviewing court will not reverse a jury verdict unless the evidence is so preponderant against the verdict as to clearly indicate that it was wrong and unjust. Walker v.Cardwell, Ala., 348 So.2d 1049 (1977); Royal Chevrolet Companyv. Kirkwood, Ala.Civ.App., 373 So.2d 858 (1979). We do not find such a preponderance of evidence here.
Crews Oldsmobile contends that even if this Court finds that fraud was committed, the evidence presented was insufficient to support an award of punitive damages. Generally punitive damages may be awarded when the fraud is malicious, oppressive or gross and the misrepresentation is made with knowledge of its falsity and with an intent to injure. Hall Motor Company v.Furman, 285 Ala. 499, 234 So.2d 37 (1970). Although in HallMotor Company, supra, punitive damages were denied because of the absence of evidence that the seller of an automobile knew the car which he sold was defective, this Court later recognized that,
 Hall does, however, clearly establish the right of the plaintiff to punitive damages when the fraud is malicious, oppressive, or gross, and the misrepresentation is made with knowledge of its falsity and with the purpose of injuring him. . . . [Boulevard Chrysler-Plymouth v. Richardson, Ala., 374 So.2d 857 (1979).]
In Boulevard Chrysler-Plymouth, supra, a $30,000.00 verdict was returned against the appellant, Boulevard, on the ground that instead of the promised "new" car, the appellee-buyer received a damaged car. The appellee had told Boulevard's salesman that he wanted a "new" car and the salesman replied that he had a car, "like you want." In fact, the buyer received a car which had not been sold at retail, but which had been *Page 915 
damaged and repaired prior to the sale. Boulevard was fully aware of the damage and repair to the car. This Court held that the evidence there was sufficient to support the award of punitive damages and allowed the $30,000.00 verdict to stand.
In Royal Chevrolet Company v. Kirkwood, Ala.Civ.App.,373 So.2d 858 (1979), the appellee-buyer instructed Royal Chevrolet to order an automobile with a 231 cubic-inch engine. He was delivered an automobile with a 200 cubic-inch engine, but was informed that the automobile was as ordered. Although there was a dispute as to whether the appellee actually agreed to the ordering of the smaller engine, the Court found that there was sufficient evidence to support a finding of fraud, and allowed the appellee to recover punitive damages.
In the case at bar there was sufficient evidence from which the jury could conclude that implied representations that the car had eight cylinders were made to Mrs. Williams. After repeatedly informing Crews Oldsmobile's salesman that she wanted only an eight cylinder car, she was shown this six cylinder car with no explanation. Moreover, Mrs. Williams was actively misled by the two documents she received at the time of the sale, which showed the car to have eight cylinders. Since there was evidence from which the jury could have reasonably concluded that Crews Oldsmobile sold Mrs. Williams an automobile substantially different from the one she requested, and did so with the knowledge of the disparity and intentionally represented to her that it was as she requested, we find that the award of punitive damages was not improper.
Crews Oldsmobile finally urges that the verdict of $30,000.00 was excessive since the actual amount of the injury here was around $1,000.00. This Court has repeatedly held that the imposition of punitive damages in cases of this kind is "discretionary with the jury acting with regard to the enormity of the wrong and the necessity of preventing a similar wrong."E.g., Neil Huffman Volkswagen Corporation v. Ridolphi, Ala.,378 So.2d 700 (1979) (there this Court approved a $27,500.00 verdict rendered for fraud and misrepresentation in the sale of a used automobile when the actual damages proved were no more than $3,650.00); J. Truett Payne Co. v. Jackson, 281 Ala. 426,203 So.2d 443 (1967) (there this Court approved a $20,000.00 verdict including punitive damages awarded for fraud and deceit in the sale of a used automobile). Moreover, a jury's verdict is presumed to be correct, and will not be set aside as excessive, unless the amount is so great as to plainly indicate that it was the result of passion, bias, prejudice or improper motive." U-Haul Company of Alabama v. Long, Ala., 382 So.2d 545
(1980).
After reviewing the evidence, we find that the verdict was not so excessive as to indicate a clear abuse of discretion on the jury's part. Thus, the award of damages was proper.
Let the judgment be affirmed.
AFFIRMED.
MADDOX, JONES and SHORES, JJ., concur.
TORBERT, C.J., concurs in the result.