Betty Jane Mahoney (Mahoney) filed suit against Earl Forsman, individually and doing business as Forsman Realty (Forsman); Bill Dana, individually and as agent and employee of Irvine Company, Inc. (Dana); and Irvine Company, Inc. (Irvine). She sought recovery under three causes of action in fraud. Following trial, a judgment was entered on a jury verdict against the plaintiff and in favor of the defendants. Following denial of Mahoney's motion for judgment notwithstanding the verdict or in the alternative for a new trial, Mahoney appealed.
The appellant raises the following issues for our review:
 1. Is the jury verdict against the great weight and preponderance of the evidence?
 2. Did the trial court err in charging the jury that, if they were reasonably satisfied from the evidence that before the sale was closed, the plaintiff's agent *Page 1032 
reviewed the document which showed that the Sheffield property was located on Third Street, then the plaintiff could not recover against defendants Bill Dana or Irvine Company, Inc.?
 3. Did the trial court err in refusing to charge the jury that a principal cannot be held responsible for the acts of his agent which have been committed beyond the scope of the agent's authority?
 4. Did the trial court err in refusing to allow into evidence testimony that the plaintiff purchased the parcel of real property with money withdrawn from an interest bearing account?
We answer the first three questions favorably to the defendants and decline to reach the fourth question. The judgment of the trial court is affirmed.
Our decision in this case turns on the following facts:
In 1979, a lot on Second Street in Montrose, Alabama, was listed for sale with the firm of Earle, McMillan and Niemeyer, Inc., a real estate agency. Late that year the agent who had handled the listing left the agency and the listing expired. During the year 1980, the partners of the firm separated and formed four firms, of which one was Irvine. One of the telephone numbers of the defunct firm was transferred to, and used by, Irvine. Among the properties listed for sale with Irvine was a lot on Third Street in Montrose. At the time of the events giving rise to this suit, January and February, 1981, this Third Street lot was the only unimproved lot in Montrose listed with Irvine.
In early 1981, Mahoney was looking at various properties, with the idea of building a home. She noticed the lot on Second Street. Propped up on the property was a "for sale" sign, bearing the name of Earle, McMillan and Niemeyer, Inc., and a telephone number. Mahoney was aware that the firm was no longer in existence and that Irvine had "taken over" the former company. At trial Mahoney testified that she called the number on the sign, and her call was answered by an Irvine employee. She asked for the price and size of the lot on Second Street, and was told that the price was $10,000.00, and given the footage. Then Mahoney called a friend to look at the lot. She told him that she had been quoted a very good price, and asked him to call the number on the sign to confirm the price. The friend called and inquired about the property, and was told the price was $10,000.00 and the size 208' X 208'.
Mahoney next prepared a letter of instruction and a check for $8,000.00, which she took to Forsman, with whom she had dealt previously. After viewing the lot, Forsman called Irvine. He testified that he talked to an agent and inquired about the lot for sale on Second Street in Montrose. Irvine's receptionist, on the other hand, testified that Forsman said he was calling to get a description of the lot that Bill Dana had listed in Montrose. The agent to whom he then talked died before trial. The agent gave Forsman a legal description that did not mention a street name, which Forsman used to prepare an offer to purchase.
After leaving Forsman's office, Mahoney asked Mac Chastang, a contractor who was familiar with the Montrose area, to look at the lot. Chastang testified that he had previously talked to a friend who lived across the street from the lot, and that the friend said the property had been listed for sale for about $40,000.00. He further testified that he remembered discussing the value of the lot with Mahoney. He recalled discussing whether the lot was a good buy for $30,000.00 or less, and telling her that it was. Mahoney testified that they never discussed price or value.
Forsman, meanwhile, delivered the offer to Irvine, where it was turned over to Bill Dana. After a counteroffer was made, a price of $8,500.00 was agreed upon.
Mahoney did not attend the closing, Forsman acting in her behalf. As part of the closing procedure, the legal description was verified, with Forsman examining the originals of the deed and title binder. The legal description set forth in the deed and title binder did not mention Second Street, but referred to Third Street a number of times. *Page 1033 
However, Forsman failed to notice this, and proceeded to disburse Mahoney's funds from his escrow account and concluded the closing, executing the closing statement in Mahoney's name. About one week later, after recording the deed, Forsman delivered the deed and other papers to Mahoney. On examining the papers, Mahoney immediately noticed that something was wrong, and on the next day confirmed that she had purchased the Third Street lot rather than the one on Second Street. Forsman went with Mahoney to find out what could be done, and was advised that the funds had already been disbursed to the seller, so Irvine could not give the money back.
Mahoney still owned the Third Street lot at the time of trial. She testified that it was unsuitable for her purposes, but was, in her opinion, worth $8,500.00.
 I
There is a very strong presumption in this state in favor of upholding jury verdicts on appeal. Wagner v. Winn-Dixie,399 So.2d 295 (Ala. 1981); Trans-South-Rent-A-Car, Inc. v. Wein,378 So.2d 725 (Ala. 1979). A denial of a motion for a new trial strengthens the presumption of correctness of the jury's verdict. Shiver v. Waites, 408 So.2d 502 (Ala. 1981); CecilCrews Chevrolet-Oldsmobile, Inc. v. Williams, 394 So.2d 912
(Ala. 1981). This court must review the tendencies of the evidence most favorable to the prevailing party and indulge such inferences as the jury was free to draw. Cooper v.Peturis, 384 So.2d 1087 (Ala. 1980); Wiggins v. McLeod,371 So.2d 660 (Ala. 1979). The reviewing court will not reverse a judgment based on a jury verdict unless the evidence is so preponderant against the verdict as to clearly indicate that it was wrong and unjust. Cecil-Crews Chevrolet-Oldsmobile, Inc. v.Williams, supra.
In an action in fraud, the plaintiff must prove each element of the fraud to the satisfaction of the trier of fact, or he cannot prevail. See Sheperd Realty Company, Inc. v. Winn-DixieMontgomery, Inc., 418 So.2d 871 (Ala. 1982); Lamb v. OpelikaProduction Credit Association, 367 So.2d 957 (Ala. 1979).
Fraud by misrepresentation of a material fact is defined in Code 1975, § 6-5-101:
 Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud.
Although Mahoney's complaint contained counts alleging misrepresentation with intent to deceive and misrepresentation made recklessly without knowledge, Mahoney makes no claim that the evidence supports these counts. As to innocent mistake amounting to legal fraud, in order to prevail the plaintiff must prove to the jury's satisfaction (1) that there was a false representation; (2) that it concerned a material fact; (3) that it was relied upon by the plaintiff; and (4) that the plaintiff was damaged as a proximate result of the reliance.Earnest v. Pritchett-Moore, Inc., 401 So.2d 752 (Ala. 1981);International Resorts, Inc. v. Lambert, 350 So.2d 391 (Ala. 1977). In addition, this court has held that the plaintiff must show that his reliance upon the misrepresentation was reasonable under the circumstances. Where a party has reason to doubt the truth of the representation or is informed of the truth before he acts, he has no right to act thereon. BedwellLumber Company, Inc. v. T T Corporation, 386 So.2d 413 (Ala. 1980).
Considering all the evidence, the jury could reasonably have concluded that it was not proven to their reasonable satisfaction that Mahoney or her agent adequately identified to Irvine and its employees the lot about which they were inquiring. Alternatively, there was evidence from which the jury could reasonably have concluded that Mahoney had reason to suspect that the price quoted for the lot she wanted, being too good to be true, was not accurate, and that she should not have relied on it without further investigation. In addition, as to Dana and Irvine, there was evidence from which the jury could have *Page 1034 
concluded that Forsman was Mahoney's agent at the closing, and, thus, that Mahoney, through her agent, had actual notice of the mistake before the transaction was concluded. As to Forsman, the jury could have concluded that he reasonably relied on the description of the property given to him by Irvine's employee, in drawing up the offer to purchase. In view of this discussion, we cannot conclude that the verdict of the jury was against the weight and preponderance of the evidence.
 II and III
Mahoney objected to the charge to the jury stated in the second issue set out above, on the ground that it could only be used when there is undisputed evidence that there was unrestricted authority on behalf of the agent of the principal. She went on to contend that Forsman's authority was limited. The same argument was used as a basis for the objection to the trial court's refusal to give the charge stated in the third issue.
In her brief, Mahoney argues that in giving the charge quoted in the second issue, the court instructed the jury that as a matter of law Forsman acted within the scope of his authority as agent for Mahoney. We disagree. In examining charges asserted to be erroneous, this court looks to the entirety of the trial court's charge to see if there was reversible error.Nelms v. Allied Mills Co., 387 So.2d 152 (Ala. 1980);Underwriters National Assurance Company v. Posey, 333 So.2d 815
(Ala. 1976). The trial court charged the jury at length on agency, including the charge:
 A principal is responsible for the acts of his agent done within the scope of [his] employment and within the line of his duties even though such act be contrary to the principal's expressed instruction. When an agent is engaged to perform a certain service, whatever he does to that end or in furtherance of the employment is deemed to be an act done within the scope of employment. Notice and knowledge of an agent while acting within his authority is such as within law is notice and knowledge to the principal.
Mahoney did not object to this portion of the charge. The portion of the charge to which she objected did not mention Forsman by name. In reading the charge in its entirety, we find that it leaves for the jury the question of whether Forsman was Mahoney's agent at the closing, according to the definition of an agent supplied by the court.
With regard to the plaintiff's requested charge which was refused, that "a principal cannot be held responsible for the acts of his agent which have been committed beyond the scope of the agent's authority," we find no error. The principle is covered by the court's charge quoted above, that "a principal is responsible for the acts of his agent done within the scope of his employment. . . ."
There was evidence that Forsman's letter of employment showed that he was employed to purchase a lot on Second Street. However, it is undisputed that after his employment the entire matter, including attending the closing and signing the closing statement, was left in his hands. In light of the evidence, we find no reversible error in the court's charge to the jury.
Because of our decisions on the above issues, we decline to reach the question on the measure of damages. The judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur. *Page 1035