473 So.2d 978 (1985)
S.S. STEELE & COMPANY, INC. and Guaranty Federal Savings and Loan Association of Mobile County, Alabama
v.
Walter G. PUGH and Linda B. Pugh.
83-3.
Supreme Court of Alabama.
April 12, 1985.
Rehearing Denied July 12, 1985.
*979 Alton R. Brown, Jr., E.J. Saad, and Michael S. McGlotheren of Brown, Hudgens, Richardson, Mobile, for appellants.
Fred W. Killion, Jr., Carl Robert Gottlieb, Jr., and Patricia K. Olney of Reams, Vollmer, Philips, Killion, Brooks & Schell, Mobile, for appellees.
FAULKNER, Justice.
This appeal arose out of the allegedly defective construction of a new home. Plaintiffs, Walter and Linda Pugh, brought an action against defendant S.S. Steele & Co., Inc. for breach of warranty, fraud, and negligence, and against defendant Guaranty Federal Savings and Loan Association of Mobile County, Alabama, for breach of contract. A jury verdict was returned in favor of the plaintiffs and both defendants appeal.
On July 14, 1975, plaintiffs Walter and Linda Pugh entered into a contract whereby defendant S.S. Steele & Co., Inc. agreed to build a house for the Pughs at a cost of $23,855.00. To finance construction of the house, the Pughs secured a loan from defendant Guaranty Federal Savings & Loan for $22,532.00.
On September 13, 1975, a monolithic slab was poured on the Pughs' lot upon which the house was to be built. On September 15, 1975, Mr. Pugh observed a crack in the slab. Subsequently, Mr. Pugh met with Mr. Steele of S.S. Steele & Co., Inc., and was assured that there were no problems with the slab and that it was structurally sound. S.S. Steele & Co. thereafter agreed to give the Pughs a 25-year warranty to indemnify them for any damage if the slab was not constructed in a workmanlike manner; in exchange the Pughs agreed to allow S.S. Steele & Co. to continue with the construction of the house.
The slab warranty read in part as follows:
"The slab upon which the above described dwelling is situated is constructed in a workmanlike manner and ... the warrantor [S.S. Steele & Co.] does hereby agree to fully indemnify and hold harmless the said Walter G. Pugh and Linda B. Pugh from and against all loss, damage, cost, fees, claims, liabilities and expenses of any kind, either to themselves or to other parties, resulting by reason of such slab being defective or from such slab having not been constructed in a workmanlike manner."
Sometime thereafter problems arose with the construction of the house. The appellees' brief summarizes the evidence regarding the alleged defects as follows:

*980 "Thereafter additional problems arose during construction which were never corrected properly, such as walls that were far out of plumb, broken rafters, exterior paint placed over mud and dirt left on the underlying materials, holes in the sheetrock and ceilings too large for the intended switch plate or fixtures, variations in color and texture on a given surface, cracked molding, and improperly laid floor tile, all of which was brought to the attention of S.S. Steele.
"The crack in the slab in the family room became worse than it was originally and led to busted exterior brick mortar and problems with a window. The cracks in the garage slab have also gotten bigger, affecting the garage ceiling, shifting a brick column between the garage doors and pulling open the windows."
On the other hand, S.S. Steele & Co. claims that the Pughs only complained about minor details in the construction and about cosmetic work which needed to be done. It says that at no time after the slab warranty was given did the Pughs ever complain about the slab, nor has the crack in the slab changed since it was originally noticed.
Pursuant to the loan agreement between the Pughs and Guaranty Federal Savings and Loan, payments were to be made to S.S. Steele & Co. in two installments. On October 31, 1975, Mr. Pugh executed a written authorization to Guaranty Federal Savings to pay S.S. Steele & Co. the initial fifty percent of the cost of construction. Upon completion, S.S. Steele & Co. was to receive the final fifty percent payment from Guaranty Federal Savings. However, after allegedly giving S.S. Steele & Co. a list of corrections which needed to be made, and being told by its representative that nothing else was going to be done to repair the house, Mr. Pugh advised Guaranty Federal Savings not to give S.S. Steele the final fifty percent payment due to the defective construction of the house.
Thereafter, Mr. Donald Williams of Guaranty Federal Savings inspected the property and eventually made the final payment to S.S. Steele & Co., even though the defects allegedly were not repaired.
The Pughs filed suit in the Mobile County Circuit Court against both S.S. Steele & Co. and Guaranty Federal Savings and Loan. Specifically, the Pughs' complaint alleged that S.S. Steele & Co. breached its warranty to build a house for plaintiffs in a good and workmanlike manner. Further, the plaintiffs claimed that the house was not constructed in a good and workmanlike manner, that that defendant breached the "slab warranty," and that as the proximate result of such breach, plaintiffs had been injured and damaged. The plaintiffs also claimed that defendant S.S. Steele & Co. made fraudulent misrepresentations upon which the Pughs relied to their detriment. Plaintiffs additionally claim that that defendant negligently constructed the slab and the house and caused the plaintiffs damage.
The plaintiffs also claim that they brought to the attention of the defendant Guaranty Federal Savings the defects in the house, and that that defendant, in violation of its agreement with the plaintiffs and contrary to the plaintiffs' instructions, nevertheless made payment to defendant S.S. Steele & Co.
The circuit court denied defendants' motion for directed verdict, and submitted the case to the jury, which found for plaintiffs and against both defendants. The jury returned a verdict against defendant S.S. Steele & Co. in the amount of $150,000.00, plus costs, and against defendant Guaranty Federal Savings and Loan in the amount of $16,281.87. The trial court denied defendants' motion for a judgment notwithstanding the verdict, and defendants' alternative motion for new trial.
The defendants appeal, raising the following issues:
I
Whether the contractual provisions preclude recovery, based upon a binding arbitration agreement.

*981 II
Whether the plaintiffs, as a matter of law, can prevail against S.S. Steele & Co. based on claims of willful or reckless misrepresentation and whether the jury could justifiably award punitive damages.
III
Whether the trial court erred to reversal in allowing the plaintiffs to present evidence concerning the reasonable market value of the house at a time other than the time of injury.
IV
Whether there was sufficient evidence of breach of contract against Guaranty Federal Savings and Loan.
We initially note that there is a strong presumption in favor of upholding a jury verdict on appeal. Upon review, we will not overturn a jury verdict unless the evidence is so preponderant against the verdict as to clearly indicate that it was wrong and unjust. Mahoney v. Forsman, 437 So.2d 1030, 1033 (Ala.1983). Upon review of the record in this case, we find that the jury's verdict is due to be affirmed as to S.S. Steele & Co. and reversed as to Guaranty Federal Savings in light of the following discussions.

I
Prior to initiation of construction of the house, the Pughs and S.S. Steele & Co. entered into a written contract that provided in part:
"(d) In the event of any controversy between the Company [S.S. Steele] and the Purchaser [the Pughs] as to the work done or the material supplied under this contract, it is agreed that the decision of the City Building Inspector, where the property is located in a municipality, or the inspector of the Lending Institution where the property is located outside the limits of a municipality, as to whether the work then done or the materials furnished are acceptable under the contract, shall be binding on both the Company and the Purchaser."
S.S. Steele & Co. argues that the Pughs cannot prevail as a matter of law because the Pughs contractually agreed to resolve any disputes by arbitration. They contend that since the representatives from Guaranty Federal Savings resolved the controversy in favor of S.S. Steele & Co., the Pughs cannot now relitigate the same issues in court and must accept the arbitrator's decision.
We disagree. In Wells v. Mobile County Board of Realtors, 387 So.2d 140 (Ala. 1980), we noted:
"The public policy of this state is to encourage arbitration and amicable settlements of differences of parties; but public policy also holds void an agreement in advance to oust or defeat the jurisdiction of all courts, as to all differences between parties."
Id., 387 So.2d at 144.
In the instant case, even if we accept appellants' argument that the parties contractually agreed in advance to submit to arbitration any controversy which might arise, such contractual provisions would serve to defeat the jurisdiction of the courts and therefore should not be enforced, as a matter of public policy.
In response, S.S. Steele & Co. also argues that the agreements are enforceable and not void as against public policy because the Pughs actually ratified the arbitration agreements by referring the controversy to Guaranty Federal Savings to inspect the premises and to withhold payments due to the dispute.
The issue of whether the controversy was actually submitted to arbitration was a question of fact for the jury. The evidence in this case was controverted as to whether Mr. Williams, the representative from Guaranty Federal Savings, was called upon to resolve the dispute in an impartial arbitrator's capacity.
The evidence indicates that the Pughs notified Guaranty Federal Savings of the *982 defective condition of the house and requested that final payment to S.S. Steele & Co. be withheld. Mr. Williams came out to inspect the home. He testified that it was generally not his job to conduct such inspections, yet he was qualified to do so. The inspection was conducted in the late afternoon, there was no electricity in the house, and a floundering light had to be used to see. A final inspection report was never prepared by Mr. Williams, allegedly because one had already been prepared by another representative from Guaranty Federal Savings. The original inspection report was never found, however, and a reconstructed report was later drafted in response to interrogatories in preparation for trial. The final payment was ultimately made by Guaranty Federal Savings after Mr. Williams determined that the defects were cosmetic in nature.
The record indicates that at trial Mr. Williams did not specifically recall many of the defects, although he did recall that the defective slab was not brought to his attention. Mr. Williams did testify, however, that if the alleged conditions did in fact exist, the payment should not have been made. There was ample testimony and photographic evidence presented by the Pughs that such defective conditions did, in fact, exist. Accordingly, a jury question was presented, and the jury was free to reasonably determine that no actual submission to arbitration had been executed.

II
The Pughs contend that there was sufficient evidence by which a jury could have concluded that S.S. Steele & Co. wilfully or recklessly misrepresented that the slab was constructed in a workmanlike manner. They argue that S.S. Steele & Co. knew or should have known that the slab was not structurally sound and that the true facts were concealed from the Pughs in order to induce them to rely upon the slab warranty and thus allow S.S. Steele to continue construction of the house. We agree.
In this case the record supports the conclusion that the Pughs relied upon the affirmative representations made by S.S. Steele & Co. that the slab would be fine and that it was structurally sound. The evidence indicates that had it not been for these representations, the Pughs would not have accepted the slab warranty and would not have allowed the construction to continue. Mr. Pugh even testified that he would have had the slab replaced, but that he was, however, encouraged not to do so and was given the slab warranty. Given the numerous defects which were allegedly caused by the cracked slab, and the testimony indicating that the crack had worsened over time, the jury was justified in determining that S.S. Steele & Co. made a willful misrepresentation regarding the suitability of the slab, which it, as a professional builder knew or should have known was false or that it recklessly represented facts without regard to whether its statements were true or not. See Alabama Code 1975, § 6-5-101. Ex parte Smith, 412 So.2d 1222 (Ala.1982).
Such testimony allowed the jury to infer either a positive intention to deceive or a recklessness amounting to the same thing. See Waites v. Toran, 411 So.2d 127, 130 (Ala.1982). Accordingly, the jury could have reasonably determined that punitive damages were recoverable.

III
S.S. Steele & Co. also argues that the trial court, over objection, improperly admitted damage testimony regarding the market value of the Pughs' home at the date of trial. In general, the proper measure of damages for injury to property is the difference in market value before and after the injury. Crump v. Geer Brothers, Inc., 336 So.2d 1091 (Ala.1976). Additionally, the measure of damages for breach of warranty of habitability is "the difference in the reasonable market value of the house in the condition at the time it was purchased and the reasonable market value of the house as it would have been had the house been constructed substantially according *983 to the contract or warranty." Crocker v. Reed, 420 So.2d 285 (Ala.Civ. App.1982).
In the instant case the admission of testimony regarding the fair market value of the house as it stood at the date of trial was apparently allowed by the trial court to show that the damages that existed had worsened over time as a result of the cracked slab. Mr. Pugh testified that the crack in the slab had gotten worse, which caused him to suffer additional loss in the value of his property between the date he moved in and the date of trial. Such evidence indicates that the cracked slab caused continuing damage to the Pugh home which increased over time. Since the injury was one of a continuing nature, a "before and after the injury" value could not necessarily be determined as of the date the Pughs moved in.
Additionally, without objection, similar testimony regarding the value of the house at the date of trial was also received from witness Sidney Knight, a professional real estate appraiser. This testimony indicated that by the nature of its defective condition, the house has failed to appreciate in value as it reasonably would have, had it been built without the defects.
Accordingly, admission of testimony regarding the fair market value of the property as it stood at the date of trial did not constitute reversible error.

IV
Finally, we hold that the verdict against Guaranty Federal Savings must be reversed. The financing contract between the Pughs and Guaranty Federal Savings involved the following provision:
"4. All work in the construction of said dwelling shall at all times be subject to the inspection of Owner [the plaintiffs] and Lendor [Guaranty Federal Savings], and Owner and Lendor shall have the right to inspect the same at all times, and in case of any dispute as to quality or workmanship or of materials or of construction not being in accordance with this agreement or with the plans and specifications, the decision of Lendor shall be final and conclusive and Owner and Contractor [S.S. Steele & Co.] agree to be bound by and conform to the same."
Since the Pughs agreed to be bound by the decision of the lender, we conclude that there was insufficient evidence to justify a finding that Guaranty Federal Savings breached its contract with the Pughs by releasing final payment to S.S. Steele.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
JONES, EMBRY, BEATTY and ADAMS, JJ., concur.
TORBERT, C.J., and MADDOX, ALMON and SHORES, JJ., concur in part and dissent in part, with opinion by TORBERT, C.J.
TORBERT, Chief Justice (concurring in part and dissenting in part).
I would reverse and remand. I concede that there was evidence of an innocent misrepresentation, Code 1975, § 6-5-101; however, it is my opinion that there is no evidence of an intentional misrepresentation. Thus, punitive damages are improper in this case.
The Pughs argue fraud, alleging that S.S. Steele knew or should have known that the slab was not constructed in a good and workmanlike manner and that the true facts were concealed in order to induce the Pughs to rely on the slab warranty and allow S.S. Steele to continue construction.
The elements of simple fraud were met. Under the evidence in this case, the jury was authorized to find that S.S. Steele made a false representation, concerning a material existing fact, upon which the Pughs relied, and that the Pughs have been damaged as a proximate result of their reliance. Haddox v. First Alabama Bank of Montgomery, N.A., 449 So.2d 1226 (Ala. 1984). However, the Pughs were not entitled to punitive damages unless (1) the *984 fraud was intentionally committed and was gross, malicious, and oppressive, and was committed with the intent to injure, Mobile Dodge, Inc. v. Waters, 404 So.2d 26 (Ala. 1981) (Torbert, C.J., concurring specially), or (2) the misrepresentation was made with such recklessness as to amount to the knowledge of its falseness. Big Three Motors, Inc. v. Smith, 412 So.2d 1222 (Ala. 1982).
The Court has stated:
"Ordinarily, intent is a matter peculiarly within the province of the trier of facts. [Citation omitted.] However, the jury has no untrammeled discretion to speculate upon the existence of fraudulent intent. Any finding on the issue must be based on reasonable inferences from the evidence...." Purcell Co. v. Spriggs Enterprises, Inc., 431 So.2d 515, 519 (Ala.1983).
Although S.S. Steele acknowledged that the slab was cracked at the time the warranty was given, that is not necessarily evidence that S.S. Steele knew that the slab was not constructed in a good and workmanlike manner. Moreover, S.S. Steele gave an express written 25-year slab warranty whereby S.S. Steele agreed to
"fully indemnify and hold harmless the said Walter G. Pugh and Linda B. Pugh from and against all loss, damage, cost, fees, claims, liabilities and expenses of any kind, either to themselves or to other parties, resulting by reason of such slab being defective or from such slab having not been constructed in a workmanlike manner."
The giving of the slab warranty negates, under the law and the facts of this case, an inference that the fraud was intentionally or recklessly committed or committed with intent to injure or deceive; thus, the award of punitive damages was improper.
I would reverse and remand.
MADDOX, ALMON and SHORES, JJ., concur.