ALMON, Justice.
This is a fraud suit against an automobile dealer. Edwinda Sarris brought this action, alleging a breach of contract and a willful or reckless misrepresentation by Treadwell Ford, Inc., in its sale of an automobile to her. The trial court submitted the breach of contract and reckless misrepresentation claims to the jury, which rendered a general verdict in favor of Sarris and assessed damages at $20,000. Tread-well argues that there was insufficient evidence to submit the contract count to the jury or to support an award of punitive damages under the fraud count.
On or about November 11, 1982, Jessie Branton,[1] Sarris's daughter, responded to a Treadwell advertisement of “demonstrators” for sale. Branton visited the dealership and talked to Treadwell’s salesman, Richard Blake. Branton testified that she told Blake she wanted a 1982 Ford Fair-mont with a six-cylinder engine. Blake , showed Branton six to eight automobiles, all of which were 1982 Fairmonts. They looked at four-cylinder Fairmonts and at six-cylinder Fairmonts. Branton testified that she told Blake she did not want a four-cylinder automobile.
Branton selected a six-cylinder maroon Fairmont that she had initially seen on the showroom floor. Blake then completed a “retail buyer’s order”. Branton signed the retail buyer’s order and completed a credit application. After all of the papers were filled out, Branton changed her mind about the color and asked Blake if she could switch to a blue Fairmont they had looked at on the lot. Blake responded that it would not be a problem. In order to write up a retail buyer’s order on the blue Fair-mont, Blake pulled the stock card on that vehicle. Although the stock cards used by Treadwell usually have the number of cylinders written in with the rest of the description of the vehicle, this particular stock card did not provide that information. Blake prepared the retail buyer’s order by referring to this stock card. He supplied *536 the information as to the number of cylinders, indicating “6 cylinder,” without referring to any other source for the information.
The papers were processed and Bran-ton’s application for credit was submitted to Ford Motor Credit Corporation. To finance the car, Branton’s mother, Mrs. Sar-ris, had to sign the note. As a result, the title to the car was put in Mrs. Sarris’s name.
Throughout, Branton and Sarris had insisted on a six-cylinder engine. Blake was aware of this. With regard to the blue Fairmont, Branton testified:
“Q Had you seen that blue car before?
“A On the back of the lot.
“Q On the back of the lot?
“A Yes, sir.
“Q Had Mr. Blake told you what cylinder that car was?
“A Yes, sir. When we looked at it on the back of the lot, which there were several of them, he said there was a 6-cylinder, it was a 6-cylinder.
“Q And he pointed out the one that he brought up; is that right? Apparently? The blue one?
“A As far as I — Yes. He brought out one that he pointed out was a blue, fr-cylinder automobile to me.”
The car did not have the window sticker on it because it was being used as a demonstrator, so Branton could not have discovered for herself that it was a four-cylinder automobile simply by looking at the sticker.
Branton testified that the car was slow and had no “pick-up,” and that while driving this car it was difficult to cross busy intersections, pass other vehicles, and climb steep grades. Nevertheless, she drove the car from January until November without complaining. Branton had no mechanical knowledge of automobiles and could not distinguish between a six-cylinder and a four-cylinder engine. In November it became necessary to take the car to a repair shop, for reasons unrelated to this lawsuit. While there, Branton voiced her complaint about the “sluggishness” of the car. It was at that time that she first learned that the car had a four-cylinder engine.
Mrs. Sarris testified that Blake had assured her that the car had six cylinders. Blake testified that he assumed that it was a six-cylinder automobile “because it was a demonstrator.” He added, “It would 99.9 percent of the time have been a six-cylinder.” However, he also testified that he showed Mrs. Branton 6 or 8 Fairmonts and that some had four cylinders and some had six cylinders: “We had occasion to look at both because until you actually, you know, inspect the vehicle, it’s impossible to tell which is which without going up and looking at the window sticker.”
The record contains a copy of the application for certificate of title to the car that Mrs. Sarris purchased. On this application the following statement appears:
“I HEREBY CERTIFY THAT THE ABOVE DESCRIBED VEHICLE HAS BEEN PHYSICALLY INSPECTED BY ME AND THAT THE V.I.N. AND DESCRIPTIVE DATA SHOWN ON THIS APPLICATION ARE CORRECT AND FURTHER, I IDENTIFIED THE PERSON SIGNING THE APPLICATION AND WITNESSED HIS SIGNATURE.”
(Emphasis in original.) Blake testified that, in accordance with Treadwell’s usual procedure, the application for title was filled out by the finance manager and the application was signed by Earldean G. Norman, who Blake described as a title clerk, as authorized agent for Treadwell. Neal White, office manager and vice president of Treadwell, signed the installment sales contract, which stated that the car had six cylinders. It is uncontested that no one at Treadwell took any step to verify that the car it sold to Mrs. Sarris had a six-cylinder engine.
Treadwell asserts that Sarris paid only for a four-cylinder engine. The difference in price between a four-cylinder and a six-cylinder automobile is $213.00. The purchase price of the car was $12,657.09, including finance charges. Thus, the damages cannot be attributed solely to the contract count, and there is no evidence that would support an award of $20,000.00 damages under the compensatory damages as *537 pect of the fraud count. The trial court granted a directed verdict for Treadwell on the intentional misrepresentation aspect of the fraud count. Therefore, if the facts will not support a claim of punitive damages under the reckless misrepresentation aspect of the fraud count, the judgment on the verdict cannot stand.
We note in passing Treadwell’s argument that the trial court erred in submitting the contract count to the jury. Tread-well argues that because Sarris paid only for a four-cylinder car, she suffered no damages from any breach of contract; that the trial court therefore erred in not granting a directed verdict on the contract count; and that this error necessitates a reversal because of the general verdict, citing National Security Fire & Casualty Co. v. Vintson, 454 So.2d 942 (Ala.1984). This argument does not present reversible error in this case, if, for no other reason, because Sarris expressly contracted for a six-cylinder car and there was some evidence of allowable damages sufficient to support submitting the claim to the jury.
On the fraud count, Treadwell essentially concedes that there was sufficient evidence of a reckless misrepresentation of a material fact, made to induce reliance and reasonably relied upon by the plaintiff to her damage, to support submitting the claim for fraud to the jury. Treadwell argues, however, that there was not sufficient evidence of culpability to submit the question of punitive damages to the jury. The trial court denied a motion for directed verdict as to punitive damages.
The facts of this case are very similar to those in Cecil Crews Chevrolet-Oldsmobile, Inc. v. Williams, 394 So.2d 912 (Ala.1981), in which this Court found sufficient evidence of intentional fraud to support an award of punitive damages. In another case with very similar facts, however, this Court found no evidence to support punitive damages. Mobile Dodge, Inc. v. Waters, 404 So.2d 26 (Ala.1981). In arguing their directed verdict motions, the parties in this case focused on Cecil Crews and Mobile Dodge.
In Mobile Dodge, supra, the Court succinctly distinguished the two cases:
“The plaintiff in Crews had repeatedly requested an eight cylinder car. After telling the plaintiff that the car in question was an eight cylinder, the dealer himself typed the number ‘8’ in the space on the application for title for the number of cylinders. That active misrepresentation by the dealer at the time of the sale clearly indicated gross and malicious fraud with an intent to deceive. In the case at bar, however, it was the stock-boy, not the dealer, who made the initial incorrect listing of the [model year of] the van. And although the jury could have inferred fraud from the acts which followed, there is no evidence of any malice involved at the time of the sale. Thus, without such malice or oppressiveness, an award of punitive damages was not warranted.”
Id., at 28.
The trial court, in denying the motion for directed verdict on the punitive damages issue, agreed with Sarris’s argument that this case is more like Cecil Crews. The court stated in distinguishing Mobile Dodge: “The distinction I see to that case is you have got a stockboy who had no connection with the transaction whatsoever making the mistake back here, and here you have got the guy who is actually selling her the car and, although he says, very plausibly to me, that the way it happened is X [i.e., that he assumed the car was a six-cylinder car because most demonstrators are], suppose the jury [doesn’t] believe him?” Furthermore, in deciding whether to submit the punitive damages claim to the jury, the court remarked:
“Well, what bothers me is the language in the statute [Code 1975, § 6-5-103] that a fraudulent or reckless representation of facts as true which the defendant did not know to be false if intended to deceive the plaintiff is equivalent to the knowledge of falsehood. If the guy says, Okay, salesmen drive 6-cylinder cars, therefore, I assume this was a 6.... That might rise to the dignity of a reckless misrepresentation or reckless representation, rather, of *538 when he didn’t either look at the papers or look under the hood. Now, that carries us to the question of the intent to deceive.
[[Image here]]
“... Can’t the jury reasonably infer from the fact that the records show one thing and he wrote down another that it was done-with the intent to sell them the 4-cylinder car?”
Finally, plaintiff’s counsel also pointed out:
“Here you have the vice president of Treadwell Ford sign the document saying it was right. You got the finance manager over here and she certifies she went out and inspected it and said it was right. Said all the information was right.”
A further distinction between this case and Mobile Dodge is that in that case, although the stockboy made an error on the sticker, the finance manager used the manufacturer’s certificate of origin in filling out the application for title, the bill of sale, and other papers, and therefore those papers reflected the correct model year even though the salesman had told the customer the wrong year and had put the wrong year on the buyer’s order form because he relied on the sticker. Here, Treadwell Ford had no system for correcting any mistakes made by the salesmen; the information for all paperwork was taken from the retail buyer’s order.
The facts of this case, especially when distinguished from the facts of Mobile Dodge and when compared to those of Cedi Crews, support the trial court’s determination that the evidence would support a finding that the misrepresentations that the car had a six-cylinder engine were made with sufficient culpability to permit an award of punitive damages. “Without knowledge of its falseness, the law allows only compensatory damages (Ala. Code 1975, § 6-5-101), unless the misrepresentation is made so recklessly and heedlessly as to amount to the same thing as knowledge of its falseness.” Ex parte Smith, 412 So.2d 1222, 1224-25 (Ala.1982); Cahaba Valley Development Corp. v. Nuding, 512 So.2d 46 (Ala.1987); International Resorts, Inc. v. Lambert, 350 So.2d 391 (Ala.1977).
For the foregoing reasons, the trial court did not err in submitting the contract count and the punitive damages claim to the jury or in denying Treadwell’s post-trial motions. Therefore, the judgment is affirmed.
AFFIRMED.
MADDOX, JONES, SHORES, BEATTY, ADAMS and STEAGALL, JJ., concur.

. Branton joined the complaint as a plaintiff, but the trial court directed a verdict against her claims, because she had no contract with Tread-well and only her mother, the actual purchaser, relied on any misrepresentations. The court instructed the jury that Branton was Sarris's agent as to any misrepresentations made to Branton.