STEAGALL, Justice.
Plaintiffs Robert and Gertrude White appeal from a judgment based on the jury verdict in favor of defendant Jefferson Clinic, P.C., and the directed verdict in favor of defendant Cooper Green Hospital on their medical malpractice claim. We affirm.
The Whites filed a negligence action in Jefferson County Circuit Court against Cooper Green Hospital and Jefferson Clinic (hereinafter “Cooper Green” and “the Clinic”), alleging failure to timely diagnose and treat Robert for viral St. Louis encephalitis. At the close of the evidence, the judge granted a directed verdict in favor of Cooper Green and the jury returned a verdict for the Clinic. The Whites filed a motion for new trial, which was denied, and they appealed.
On September 14, 1979, Gertrude drove her husband to Carraway Methodist Medical Center (hereinafter “Carraway”) in response to dizziness, fever, nausea, and weakness he had experienced for two days. Because the Whites did not have hospitalization insurance, Carraway referred them to Cooper Green, which treats indigent patients and those without insurance. The Clinic was under a contract with Cooper Green to provide doctors for Cooper Green’s emergency room. The doctors at Carraway notified Dr. Anthony Meyer, an employee of the Clinic and emergency room physician at Cooper Green, that Robert was being referred to them. Upon arriving at Cooper Green that same morning, Robert was seen by an emergency room nurse, who wrote to “rule out meningitis.” Robert was then examined by Dr. Adam Robertson, also an employee of the Clinic and the physician on duty in Cooper Green’s emergency room, who diagnosed Robert as having “flu syndrome.” Robertson prescribed Ascriptin for Robert and sent him home.
That night, Gertrude noticed that her husband felt as if he had a fever; that fever persisted throughout the next day, and on September 16, she took him back to the Carraway emergency room with a 105-degree temperature. The doctors at Carra-way performed a lumbar puncture, or spinal tap, to analyze fluid, and Robert was diagnosed as having St. Louis encephalitis. The Whites claim that as a result of Cooper Green’s failure to diagnose the encephalitis, Robert suffered permanent and serious brain damage that rendered him totally disabled. The Whites make two arguments on appeal.
The first is that the trial court erred in denying the Whites’ motion for new trial because the jury’s verdict was against the preponderance of the evidence and was palpably wrong and manifestly unjust. Specifically, the Whites argue that the minimum standard of care requires the performance of a spinal tap when a patient presents symptoms consistent with or indicative of meningitis and/or encephalitis, and that Cooper Green breached that standard in not administering one.
In examining the testimony by the experts for both the Whites and the Clinic, we are guided by the standard set by this Court:
“The ground of the motion that the verdict of the jury is contrary to the law and the evidence presents no other question than a consideration of the evidence to see if allowing all reasonable presumptions in favor of the correctness of the verdict, the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust.”
Shiver v. Waites, 408 So.2d 502, 504 (Ala.1981), quoting Water Works & Sanitary Sewer Board of the City of Montgomery v. Norman, 282 Ala. 41 at 46, 208 So.2d 788 at 792 (1968).
The Whites first called Dr. Daniel Waterman, a specialist in internal medicine and infectious disease, who testified that a spinal tap should have been done because Robert manifested signs and symptoms of *373 meningitis and encephalitis and the only way to rule out either one is by performing the test. He further stated that a spinal tap would have determined that Robert had meningoencephalitis, which encompasses a number of specific causes of the type of inflammation Robert had, one of which is St. Louis encephalitis; the test would not have determined specifically that Robert had St. Louis encephalitis.
The Whites’ second expert, Dr. Rene Gel-ber, who is director of the surgical intensive care unit at the University of Maryland Hospital in Baltimore, testified that the signs and symptoms exhibited by Robert would be compatible with meningitis or encephalitis and that the minimum standard of care required a spinal tap. Dr. Gelber’s opinion was that the spinal tap would have reflected underlying inflammation suggestive of either meningitis or encephalitis.
The Clinic’s first expert was Dr. William Dismukes, a specialist in internal medicine and infectious diseases, who explained that there are two types of meningitis: bacterial and viral. Bacterial meningitis, which is associated with a stiff neck and severe headache, is considered a medical emergency, whereas viral meningitis is not an emergency and is reflected by a milder headache and a more supple neck. The patient with viral meningitis is usually alert and can communicate freely. Dr. Dismukes stated that if viral meningitis is what is suspected, a doctor could elect to watch the patient, not do a spinal tap, and see what happens over the next 12 or 24 hours with the patient at home. Dr. Dismukes’s opinion was that Dr. Robertson’s diagnosis of flu syndrome was one that would have been made by many physicians, given the information that was available, and he could not state that Robert’s fever was the cause of his brain damage.
The Clinic’s other expert, Dr. Frederic Ransom, who practices internal medical, observed that the hospital record specifically said that Robert had a supple neck. He stated that the classic description of encephalitis is a headache, a fever, and a stiff neck, which is easily detected and easily distinguished from a supple or more flexible neck. Dr. Ransom concluded, after reviewing the X-ray report, the lab results, and the urinalysis, that those tests demonstrated nothing inconsistent with Dr. Robertson’s diagnosis of flu syndrome and that it was an absolutely reasonable conclusion based on the information Dr. Robertson had. In his opinion, it would be very reasonable not to do a spinal tap.
Allowing all reasonable presumptions in favor of the correctness of the jury’s verdict, we are not convinced by this evidence that it was wrong and unjust. “While a jury verdict may not be predicated on pure speculation or conjecture, ... there is a very strong presumption in this state in favor of upholding jury verdicts on appeal.” Wagner v. Winn-Dixie, 399 So.2d 295, 296 (Ala.1981). This presumption is strengthened when a trial judge denies a motion for a new trial. Cecil Crews Chevrolet-Oldsmobile, Inc. v. Williams, 394 So. 2d 912, 914 (Ala.1981). We do not find that the jury’s verdict was against the preponderance of the evidence, and we affirm the trial judge’s denial of a new trial.
The second argument the Whites make is that the trial court erred in granting Cooper Green’s motion for directed verdict based on a lack of an agency relationship between the Clinic and Cooper Green. Our affirmance of the jury’s finding in favor of the Clinic allows us to pretermit a discussion and resolution of this issue. Because the jury did not find the Clinic liable, the issue of whether the Clinic was Cooper Green’s agent (thus subjecting Cooper Green to potential liability) is moot. The Whites have not alleged any negligence on the part of Cooper Green. Their sole ground for holding Cooper Green liable is respondeat superior. In fact, the Whites’ brief reiterates:
“The plaintiffs did not allege any independent negligence on behalf of any of the agents, servants, or employees of the defendant, Cooper Green Hospital. Rather, the plaintiffs’ theory of recovery against Cooper Green Hospital is based on vicarious liability, i.e., the fact that there was an agency relationship be *374 tween Jefferson Clinic, P.C., and Cooper Green Hospital.”
“Under the doctrine of respondent superior, the general rule is that a verdict cannot stand which finds against the master and for the servant. This rule is limited to those cases where the liability of the master is predicated solely on the act or omission of the servant.” Otwell v. Bryant, 497 So.2d 111, 115 (Ala.1986).
Thus, the judgment is affirmed as to both defendants.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and ADAMS, JJ., concur.