[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1152 
This is a tort action for fraudulent misrepresentation and suppression of a material fact which the defendant was under an obligation to communicate. This cause of action arose out of the sale of an automobile by Village Toyota Company, Inc. (defendant and appellant herein), to the plaintiffs Alesa Mae Stewart and her husband Jesse C. Stewart. The plaintiffs alleged that they were charged twice for an optional warranty. The jury found for the plaintiffs and awarded damages of $50,000.00.
In October 1980, the plaintiffs contacted a salesman for the defendant, an automobile dealer in Auburn, and told him they were interested in buying a Toyota. The salesman told the plaintiffs that the price for the car they were interested in was $5,400.00. On October 20, the plaintiffs went to the defendant dealership to look at the car and to discuss the purchase. The plaintiffs decided that they would purchase the car that had been described in the telephone conversation. The salesman told them that some additional accessories had been added to the car and that the total price as it now stood was $5,800.00. Plaintiffs indicated that they also wanted air conditioning and an AM-FM stereo radio.
At this time, plaintiffs were the owners of a 1976 Mercury. The salesman indicated he would allow $1,700.00 for the Mercury as a trade-in. Plaintiffs rejected this offer and the salesman inquired if plaintiffs would accept $2,300.00 for a trade-in, and the plaintiffs indicated that this would be acceptable. At that time the salesman began to fill out a buyer order form. The salesman indicated that the total price of the car with the air conditioning and radio requested would be $6,706.56. The salesman then asked if the plaintiff would like to purchase the "Tender Loving Care" (TLC) warranty package as an option at a cost of $217.00. Plaintiffs declined to buy the TLC package. The salesman then asked them to sign the order form indicating thereon that they did not want to buy the TLC package. The salesman then took the order form to the business manager, who rejected the proposed order but indicated that it would be acceptable to allow $2,200.00 for a trade-in on plaintiffs' car. At this point the salesman filled out another buyer order form, this time listing the trade-in value as $2,200.00. Plaintiffs again indicated that they did not want the TLC package. The business manager approved this transaction.
At trial the window sticker from the automobile was introduced. The first sticker shows a total price including the TLC option of $5,423.61 for the car. This is approximately the price that was quoted to the plaintiffs in the first telephone *Page 1153 
conversation with the defendant's salesman. In addition, this car was equipped with stripes, wheel molding, and door guards, bringing the price to $5,843.56. This is approximately the price that was quoted to the plaintiffs before they indicated they wanted air conditioning and an AM-FM stereo radio.
After all of these negotiations, plaintiffs were taken to the office of the business manager, where the business manager discussed the TLC warranty program in more detail with them, and subsequently the plaintiffs agreed to purchase the warranty. The business manager then filled out a document which showed an additional charge of $217.00 for TLC. The plaintiffs subsequently took their new car and left the dealership. They did not receive any of the documents other than the window sticker at the time they took the automobile home.
After receiving the documents in the mail, the plaintiffs concluded that they had been charged twice for the TLC option: once in the base sticker price and a second time by the business manager. Mr. Stewart, one of the plaintiffs, went to the defendant's place of business to inquire how much the air conditioning and the radio cost. The business manager indicated that he did not have that information; however, he said it appeared to him that the plaintiffs had not been charged twice for the TLC. The business manager told Stewart that the reason the $217.00 option for TLC, as reflected on the window sticker, was not subtracted from the original price was that he had allowed more than the true value of the Mercury as a trade-in allowance. The manager explained that the Mercury was not worth more than $1,800.00 or $1,900.00.
Mr. Stewart subsequently spoke with the salesman and inquired about the charges for the air conditioner and radio. The salesman told Stewart that that information was not available and he could not tell Stewart. Mr. Stewart also stated to the salesman that he thought he had been charged twice for the TLC. The salesman responded he was not charged twice; rather, he was allowed more than his used car trade-in was worth, which more than compensated for the $217.00 shown for the TLC option on the window sticker. He stated this was a tactic used by salesmen to make a deal.
The plaintiffs subsequently contacted a lawyer, who met with Don Riggins, the general manager of the defendant. Riggins indicated that he did not see anything wrong with the transaction. Plaintiffs subsequently filed this suit asking $217.00 compensatory and $75,000.00 punitive damages. Following a judgment in the lower court in favor of the plaintiffs, the defendant brought this appeal.
Defendant urges this Court to reverse the trial court on the basis that there was insufficient evidence to support a judgment for fraudulent misrepresentation under Code 1975, §6-5-101. The elements of fraudulent misrepresentation under this code provision are: (1) a false representation, (2) concerning a material existing fact, (3) which is relied upon by the plaintiff, and (4) damage to the plaintiff as a result of the false representation. Earnest v. Pritchett-Moore, Inc.,401 So.2d 752 (Ala. 1981).
As to the first element, the plaintiffs' complaint alleged that the defendant "misrepresented to the plaintiffs that the sales price did not include a charge for an optional new car protection plan known as Tender Loving Care." The defendant maintains the salesman never explicitly told the plaintiffs that the sales price did not include the TLC package. Defendant maintains that the plaintiffs were given a total package price, including air conditioning and radio of $6,706.56. Further, defendant argues that the sticker price, which included TLC, should not be considered as forming part of the basis of this transaction. We cannot agree.
When the plaintiffs initially called the dealership, they were quoted the sticker price for this particular car, which included the TLC package. When they arrived at the dealership the sticker price was again the initial price quoted. Plaintiffs told the salesman that they did not want TLC added into the price of the Toyota. However, *Page 1154 
neither the salesman, nor the business manager, subtracted the cost of TLC from the total sales price.
It appears to this Court that the sales price of $6,706.56 was reached by adding the following: 1. total distributor's suggested retail price (or sticker price, which included TLC) of $5,423.61, 2. additional options added by the dealer bringing the price to $5,843.56, 3. air conditioning, and 4. AM-FM stereo radio bringing the price to $6,706.56. Since the initial component, the sticker price, included a $217.00 charge for TLC, we find the defendant's arguments concerning a package price unconvincing.
We are further moved to this result by the admissions of the defendant's own sales manager and salesman, both of whom stated that the $217.00 charge on the window sticker was left in the total price because of an alleged over-allowance on the trade-in. They explicitly told the plaintiffs they were receiving a $2,200.00 trade-in allowance; they implicitly indicated that there was no charge being made for TLC. If one of these is true, then necessarily the other is false. Thus there was sufficient evidence of a misrepresentation in this case.
The defendant also argues that the fraudulent misrepresentation must concern a material existing fact which supplies the inducement or motivation for plaintiffs' action. Defendant states that the amount of the trade-in allowance was the critical factor which induced the purchase, not the charge for the TLC package.
We cannot agree. The plaintiffs repeatedly indicated that they did not want the TLC package and it seems fair to presume that they would not have accepted the deal if they had been told they were paying for an option which, at that time, they did not want. Further, the charge for the TLC and the amount of the trade-in allowance, by defendant's own admissions, are inextricably bound together. Plaintiffs indicated they would not accept less than $2,200.00 as a trade-in. If, as defendant argues, the amount allowed for a trade-in was inflated because of the TLC overcharge, then it would be illogical to say plaintiff relied on only one and not the other.
Defendant also maintains that the plaintiffs were not damaged as a result of the misrepresentation. Again, we disagree. Initially, the plaintiffs signed an order form indicating they were not being given TLC although the sticker price included a charge for it. They later agreed to pay an additional $217.00 (over and above the "package price" of $6,706.56) in order to obtain this option. We are of the opinion that the jury could have found that the plaintiffs' actual damages as a result of this transaction were $217.00.
Finally, defendant argues that even if there was a material misrepresentation, the plaintiffs' reliance must have been reasonable under the circumstances. Bedwell Lumber Co., Inc. v.T T Corp., 386 So.2d 413 (Ala. 1980). If there is knowledge, or notice of facts which would have excited inquiry, or surrounding circumstances which would have aroused suspicion in the mind of a reasonable person, a plaintiff cannot be said to have relied upon a misrepresentation and cannot recover. Hopperv. Curry, 408 So.2d 83 (Ala. 1981).
We agree with the general propositions of law cited by the appellant; nonetheless, we conclude that in this case the evidence was sufficient to support a finding that the actions of the plaintiffs were reasonable. The plaintiffs saw the sticker, which included a charge for TLC. They subsequently told the defendant's salesman they did not want this option; however, they did want air conditioning and a radio. The defendant then quoted a total price for the car, which should have reflected only the options the plaintiff wished to purchase. There was no price breakdown given for any of these options. Therefore, under the evidence presented, the jury could have found that the plaintiffs were justified in thinking that defendant had subtracted the price of the TLC and added the price of the air conditioning and radio in arriving at the total price. Thus, the plaintiffs' reliance on *Page 1155 
the defendant's misrepresentation was reasonable under these circumstances.
The defendant also urges this Court to hold that there was insufficient evidence to support a claim for suppression of a material fact under Code 1975, § 6-5-102. The jury returned a general verdict in favor of the plaintiffs. Where, as here, we have found that the evidence was sufficient to sustain a jury verdict under the first count pursuant to Code 1975, § 6-5-101, we need not consider the evidence in relation to the second count brought under Code 1975, § 6-5-102. SoutheasternGreyhound Lines v. Callahan, 244 Ala. 449, 13 So.2d 660 (1943). See also, Super X Drugs of Alabama, Inc. v. Martz, 51 Ala. App. 370, 286 So.2d 47 (1973).
The defendant also maintains that an award of punitive damages in this case is not warranted. It states that in order to allow an award of punitive damages the fraud must be gross, malicious, oppressive, and committed with intent to injure.Mobile Dodge, Inc. v. Waters, 404 So.2d 26 (Ala. 1981). Defendant states there is no evidence of any of these elements in this case, but rather that there appears to have been a misunderstanding concerning the price.
We are of the opinion that an award of punitive damages in this case was justified. In Cecil Crews Chevrolet-Oldsmobile,Inc. v. Williams, 394 So.2d 912 (Ala. 1981), the plaintiff repeatedly told the car dealer she wanted to purchase an eight-cylinder car. The dealer sold her a six-cylinder car and the plaintiff was awarded $30,000.00 for misrepresentations made by the defendant. In that case we found that the fraudulent conduct of the defendant was sufficiently gross to uphold an award of punitive damages. We find that case to be analogous to the case before us, where plaintiffs repeatedly stated they did not want an option, were led to believe they were not purchasing that option, but were nonetheless charged for it. We find this type of fraudulent conduct sufficiently gross to merit an award of punitive damages.
Damages in these cases are allowed not only to punish the defendant, but also for the purpose of protecting the public by deterring the defendant and others from doing such wrong in the future. Loch Ridge Const. Co. v. Barra, 291 Ala. 312,280 So.2d 745 (1973). The practice described in this case is a customary practice at Village Toyota, according to testimony by defendant's witnesses at trial. Conduct of this nature is simply dishonest. According to testimony at trial, this continues to be the custom and practice of the defendant. An award of punitive damages by the jury may in some way deter this conduct in the future.
The defendant also maintains that even if punitive damages were proper in this case, the jury verdict of $50,000.00 is excessive. Damages are considered excessive if they shock the judicial conscience or are so great as to indicate they are the product of sympathy, passion, or prejudice. U-Haul Co. ofAlabama v. Long, 382 So.2d 545 (Ala. 1980). We approach these determinations keeping in mind that the trial judge was in the best position to consider the excessiveness of a verdict. The judge denied a motion for new trial based on the excessiveness of the verdict. There is no indication that the verdict is the product of "prejudice or passion." Therefore, we hold that the jury verdict in this case is not excessive and is due to be upheld.
Defendant has also urged this Court to reverse the trial court for several evidentiary rulings. These rulings concerned questions about the prior employment history of the general manager, the sale of credit life insurance in connection with the car, the marital status of the salesman, and failure by the dealership to produce repair invoices on the air conditioning and radio for this car. After examining the record and the briefs of the parties, we find that each of the alleged errors is without merit.
During the cross-examination of the salesman, plaintiff's counsel asked if he had been convicted of contempt of court for failure to pay child support. Defendant objected and the trial court sustained the *Page 1156 
objection. The trial court instructed the jury to disregard the question and denied defendant's motion for a mistrial. Defendant maintains that the sole purpose of this question was an attempt to prejudice the jury. Defendant also argues that corrective instructions were not adequate to remove the prejudicial effect of this question.
Appellees submit that the question itself was proper because a contempt of court is a crime of moral turpitude. There are no Alabama cases speaking to this question; however, we find it unnecessary to decide the issue in the case before us. The question was never answered by the witness, and the court instructed the jury to disregard the question. In order to warrant reversal, any alleged error must be prejudicial and must affect the substantial rights of the party. Schneider v.Mobile County, 284 Ala. 304, 224 So.2d 657 (1969); Garrison v.Grayson, 284 Ala. 247, 224 So.2d 606 (1969). We are unconvinced that the question itself prejudiced the substantial rights of the defendant. Therefore, we find this contention of the appellant to be without merit.
The defendant, on appeal, argues that A.R.Civ.P. 9 (b) requires that fraud shall be pleaded "with particularity." We agree; however, the defendant failed to make any motion to dismiss plaintiff's complaint during the pleading or trial stages of this case. Thus, if there were error, the defendant failed to preserve it for appellate review. Holt v. Davidson,388 So.2d 548 (Ala. 1980).
Defendant also maintains that it was error for the trial court to deny the challenge for cause of one of the jurors. During voir dire the defendant's counsel asked, "Is there any reason that you know of that you could not sit on the trial of this case and give the defendant, Don Riggins or Village Toyota, a fair and reasonable trial?" Prospective juror Pledger indicated an affirmative answer to this question. Defendant challenged this juror for cause. Upon further examination, Pledger related an incident which occurred in 1977 when he went to the defendant dealership to trade a truck and had difficulty getting the keys to his vehicle back and threatened to call the police. Pledger stated he would not do business with the defendant under any circumstances. He further stated that he thought he was "treated unfairly, very unfairly, by the defendant." However, when asked whether he thought his experience would make it impossible to give the defendant a fair and impartial trial, he stated "No sir, I don't believe it would." The trial court denied defendant's challenge of this juror for cause. Subsequently, defendant used its first strike to have Pledger removed.
The standard for determining whether a juror should be disqualified for bias or prejudice has been stated as follows:
 "The test to be applied is probable prejudice. Probable prejudice for any reason disqualifies a prospective juror. Qualification of a juror is a matter within the discretion of the trial court and, on appeal, this court will look to the questions propounded and the answers given by the prospective juror to see if this discretion was properly exercised."
Alabama Power Co. v. Henderson, 342 So.2d 323, 327 (Ala. 1977). After reviewing the record, we cannot say that the trial court abused its discretion in disallowing the challenge of this juror for cause.
We also note that the defendant was not prejudiced by being forced to use one of its strikes to remove Pledger from the jury. Appellees state in their brief:
 "The parties struck from a jury panel of fifty-two. Defendant cannot claim that it was prejudiced in having to use one of its strikes to remove Pledger. With Pledger on the panel, Plaintiffs had twenty strikes and defendant had twenty strikes. Defendant used its first strike for Pledger leaving defendant with nineteen strikes. If Judge Gullage had excused Pledger, [that] would have left a panel of fifty-one jurors. Plaintiffs would have gotten twenty strikes (they demanded the jury) and defendant would have gotten nineteen strikes." *Page 1157 
During the course of closing argument plaintiffs' counsel stated, "My folks came over here to spend their money in Lee County, to buy a car. I don't believe that you're proud of what has happened here with Village Toyota. They've [defendant] come down here from Anniston and the money goes back to Anniston."
Defense counsel objected without stating any grounds, other than this was an improper argument. The trial court did not make a specific ruling on the objection, but simply directed counsel to "Go ahead." Alabama Power Co. v. Henderson,342 So.2d 323 (Ala. 1976). No action by the trial court was invoked.
Rule 46 of the Alabama Rules of Civil Procedure provides:
 "Formal exceptions to rulings or orders of the court are unnecessary; but for all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him."
A.R.Civ.P. 46. We recognize that failure to state the grounds of an objection is not fatal where the ground is "so manifest that the trial court and counsel cannot fail to understand it."Berryhill v. Berryhill, 410 So.2d 416, 418 (Ala. 1982). We cannot say that the ground for this objection was so manifest as to be automatically understood by the parties and the judge. Further, we find that defendant's counsel failed to invoke any action by the court as required by Rule 46.
Defendant also urges this court to reverse the trial court for allowing testimony from Gloria Pinkard. The pretrial order indicated that the names of witnesses would be exchanged ten days prior to trial except for rebuttal and impeachment witnesses. Gloria Pinkard's name did not appear on the list provided by plaintiff; however, at the conclusion of defendant's evidence the plaintiffs called Gloria Pinkard as a witness. The defendant objected to the testimony of this witness on the ground that because it did not constitute rebuttal or impeachment testimony, the plaintiffs should have provided defendant's counsel with Pinkard's name ten days before trial. The trial court overruled the defendant's objection to the testimony by this witness.
Appellees maintain that Pinkard's testimony was strictly rebuttal testimony. In this case the value of the Mercury Capri which was traded-in by the plaintiffs was at issue. Defendant's witnesses had testified that there had been an over-allowance on the trade-in of the Mercury. We agree with appellee that Pinkard's testimony concerning the amount she paid for the Mercury when she purchased it as a used car from Village Toyota was offered to rebut defendant's assertions as to its value and the alleged over-allowance.
Finally, defendant's counsel objects to the failure by the court to give eight written requested charges. In the pre-charge conference the court told defendant's counsel which of defendant's requested charges would not be given. Defendant's counsel stated, "We would object to the refusal to those charges the court refused." When asked if counsel would like to be heard further on the refused charges, counsel replied, "Not at this time; I would reserve the right to wait until you finish your oral charge, if the court will permit me to do so." After giving the written requested charges to the jury, the court asked counsel for both parties if they were satisfied with the charge. Defendant's counsel stated that he was, "with the exception of the matters we took out earlier, satisfied," Again, defendant's counsel never stated a ground for the earlier objection. Finally, after giving additional instructions to the jury, the court gave the defendant's counsel one last opportunity to object and state the ground of his objection. Defendant's counsel stated that he was satisfied.
Rule 51 provides in part: *Page 1158 
 "No party may assign as error the giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection."
A.R.Civ.P. 51. We have reviewed the record and find that defendant's counsel failed to state any grounds for his objections. "Therefore, error, if any, connected with these charges is deemed waived." Alabama City Bank of Gadsden v.Vaughn, 413 So.2d 1053, 1056 (Ala. 1982).
After a thorough review of the extended list of alleged errors, we find that the judgment is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, FAULKNER, JONES, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.
ADAMS, J., recused.