There was a jury verdict for Wayne Alexander against Allstate Enterprises, Inc., in the amount of $25,000 for trespass and conversion. Allstate appeals.
Allstate financed an automobile for Alexander. In October 1983, Allstate assigned Alexander's account to Larry Hancock for repossession of the automobile. Hancock was not an employee of Allstate. He repossesses for Allstate and other lending institutions. He was not given any specific instructions as to how to repossess Alexander's automobile. His instructions were simply to repossess the automobile.
Hancock had a key made for the automobile and removed the automobile from the driveway of Alexander's home at approximately 2:00 A.M. The yard was not fenced. Hancock did not confront anyone while removing the vehicle from Alexander's yard. Hancock notified the sheriff that the automobile had been repossessed and delivered the automobile to Allstate.
Allstate provided Hancock with a "hold harmless" letter, which was not introduced. Hancock testified: "To a certain extent they [Allstate] hold me harmless, except in the event of any wrongdoing on my part, such as a breach of the peace or anything like that. They have no responsibility at that point."
On the same evening that the automobile was taken by Hancock, Alexander's utility house was forcibly entered and a carpenter's line belt and other items were taken from the utility house. The carpenter's line belt was among the items of personal property which were returned to Alexander by Allstate as having been personal property of Alexander in the automobile at the time of repossession. Certain personal property which was in the automobile and which was in the utility house was not returned to Alexander.
At the close of Alexander's evidence and at the close of all the evidence, Allstate moved for a directed verdict.
After the verdict, Allstate moved for a judgment notwithstanding the verdict or, in the alternative, for a new trial.
Even though Allstate's able counsel describes it as "that last bastion of refuge for a beleaguered plaintiff who otherwise has no case," the "scintilla of evidence" rule is given application in this jurisdiction. Penticost v. Massey,202 Ala. 681, 81 So. 637 (1919).
It is conceivable that gibberish and jargon have caused form to encrust form until most vitality has been squeezed out of the scintilla rule. This Court, in some cases, while giving lip service to this standard, in fact, has applied a more stringent standard than those courts professing to apply the substantial evidence standard. See the excellent article by Professor Jerome A. Hoffman, Alabama's Scintilla Rule, 28 Ala.L.Rev. 592, 608-631 (1977). The scintilla rule should be revisited.
The scintilla rule of evidence is the unique sufficiency standard that most favors jury determination. Let the courts and bar recognize it as being that, and stop the rote recitation of gleam and glimmer, spark and trace which seems more like a chorus of "Glow Worm" than a definitive statement of the standard which was the prevailing rule or standard at the time of the adoption of the United States Constitution,Company of Carpenters v. Hayward, 99 Eng.Rep. 241 (K.B. 1780), and which was adopted as the rule or standard by the early American courts, see, e.g., Parks v. Ross, 52 U.S. (11 How.) 362, 13 L.Ed. 730 (1850).
The "scintilla of evidence" rule or "any evidence" rule developed out of the device previously used by parties to test the sufficiency of their opponent's evidence prior to *Page 377 
a verdict, i.e., the demurrer to the evidence. The demurrer to the evidence was designed to prevent verdicts contrary to law. In demurring to the evidence, the defendant was required to admit the truthfulness of all evidence favorable to the plaintiff, which removed all issues of credibility from the case. If there were facts from which the jury could reasonably infer the ultimate facts upon which the claim or defense depended, the party had to concede the inference. If the inferences were not logically unreasonable, even though they were not the most likely inferences to be drawn, this would defeat the demurrer to the evidence. By requiring the moving party to concede the truthfulness of the opponent's evidence, the demurrer operated without encroaching upon the jury's function of assessing credibility and weighing the evidence. To ensure that the judge did not usurp the function of the jury, the demurrer to the evidence incorporated the view that "any evidence" would take a proponent's case to the jury. Hoffman, Alabama's Scintilla Rule,supra, 605.
Mr. Justice Hugo Black wrote that the "any evidence" standard or rule was given "any ugly name," i.e., scintilla, to "hasten its demise." Galloway v. United States, 319 U.S. 372, 404,63 S.Ct. 1077, 1094, 87 L.Ed. 1458 (1943) (Black, J., dissenting).
This Court may be the last to lay the old aside, but it is not willing to shift from the jury as the trier of facts to the judge the function of determining the credibility of evidence introduced. This Court is not willing to shift from the jury as a trier of facts to the judge the function of ascertaining what inferences may reasonably be drawn from circumstantial evidence deemed credible. This Court is not willing to shift away from the jury as a trier of fact to the judge the function of weighing the various hypotheses inferable from all of the circumstantial evidence. So whether the scintilla of evidence rule is viewed as "that last bastion of refuge for a beleaguered plaintiff who otherwise has no case" or as the unique sufficiency standard that most favors jury determination and which was the prevailing rule at the time of the adoption of the United States Constitution and was the standard of sufficiency adopted by the early American courts, the scintilla of evidence rule (or "any evidence" rule) will be given application in this jurisdiction.
If Hancock had been a defendant, clearly, the "scintilla of evidence"/"any evidence" rule would have required that both the trespass count and the conversion count go to a jury as to Hancock. For reasons known only to Alexander, this cause was brought against Allstate only. Allstate's first issue for review is whether there was a scintilla of evidence that Hancock was an agent of Allstate. It is not necessary for the Court to determine this. This case went to the jury on the theories of trespass and conversion. There is evidence that a pair of snow chains, jumper cables, and a tape recorder and other personal property, which was the property of Alexander, was in the automobile the night it was repossessed. There is evidence that Hancock delivered the automobile and contents to Allstate. There is evidence that Allstate returned to Alexander certain items that were in the automobile the night it was repossessed, but not others. A pair of snow chains, jumper cables, and a tape recorder were not returned to Alexander. There is evidence that the utility house was broken into the night that the automobile was repossessed and that certain items, such as a carpenter's line belt, side grinder, drills, and a tow bar were taken from the utility house. Allstate returned the carpenter's line belt to Alexander, but not the side grinder, drills, or towbar. Assuming all of this is true, were there facts from which the jury could reasonably infer the ultimate facts upon which a claim for trespass or conversion was based against Allstate? Yes. The jury could reasonably infer that the pair of snow chains, jumper cables, tape recorder, side grinder, drills, and towbar were taken by Hancock, were given to Allstate by Hancock, and were not returned to Alexander by Allstate.
Conversion is the wrongful exercise of dominion over property in exclusion or *Page 378 
defiance of a plaintiff's rights, where said plaintiff has general or special title to the property or the immediate right to possession. Ott v. Fox, 362 So.2d 836 (Ala. 1978). Under these facts, it would not be logically unreasonable for a jury to conclude that Allstate wrongfully exercised dominion over Alexander's property. The jury could reasonably infer that there was a conversion.
The jury returned a general verdict without reference to either the count in trespass or the count for conversion; therefore, the verdict would be referred to either of the counts supported by the evidence. Sparks v. Milligan, 295 Ala. 358, 330 So.2d 417
(1976); Gamble v. Webb Quarterback Club, 386 So.2d 455
(Ala.Civ.App. 1980), cert. denied, 386 So.2d 459 (Ala. 1980).
The judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON, and BEATTY, JJ., concur.