518 So.2d 77 (1987)
SOUTHERN LIFE AND HEALTH INSURANCE COMPANY
v.
Robert C. SMITH, Jr.
Robert C. SMITH, Jr.
v.
SOUTHERN LIFE AND HEALTH INSURANCE COMPANY.
86-71, 86-97.
Supreme Court of Alabama.
October 2, 1987.
Rehearing Denied December 4, 1987.
*78 Jack Corbitt, Ozark, and Kenneth E. Little, Vice Pres. & Gen. Counsel of Southern Life & Health Ins. Co. and Ollie L. Blan, Jr. of Spain, Gillon, Tate, Grooms & Blan, Birmingham, for appellant/cross-appellee.
Kenneth W. Quattlebaum of Brogden & Quattlebaum, Ozark, for appellee/cross-appellant.
Rehearing Denied in 86-71 December 4, 1987.
HOUSTON, Justice.
This is a fraud case. The jury awarded Robert C. Smith, Jr., $30,000 in compensatory damages, and $35,000 in punitive damages. The trial court remitted all but $86.51 of the compensatory damages award, and the remittitur was accepted by Smith. Southern Life and Health Insurance Company appeals. Smith cross-appeals from the order remitting the compensatory damages.
The case was tried around the factual disputes of whether Smith and his wife told the agents of Southern Life that Smith's wife was pregnant or suspected that she was pregnant at the time of the taking of the application for hospital, medical, and surgical expense coverage; and whether the Southern Life agents told Smith and his wife that the policy would cover expenses connected with the pregnancy even though she was pregnant at the time of the taking of the application.
Smith paid a total premium of $86.51; $52.45 on August 12, 1982, the date of the application for the policy, and $34.06 on September 9, 1982, the date of the delivery of the policy. The policy that was delivered to Smith contained the following provision regarding maternity benefits:
"4. MATERNITY BENEFITSUpon receipt of due proof of hospital confinement of the Insured (or the Insured's wife, if she is covered) as a result of normal childbirth or pregnancy, the Company will pay to the Insured for the expenses of such confinement an amount determined from the following table:
"In event If confinement begins after the policy has been
of hospital in force
confinement
resulting at least 280 days but two or more years,
from less than two years, the benefit payable is
 the benefit payable is
"Normal 8 times the Daily 12 times the Daily
childbirth Hospital Indemnity Hospital Indemnity
"Additionally, hospital confinement resulting from premature birth will, for benefit purposes, be treated in the same manner as a normal pregnancy provided pregnancy commenced at least 30 days after the policy date.
"This is the only provision in this policy which insures against the expenses resulting from normal childbirth or pregnancy."
In October, when an agent for Southern Life came to Smith to collect the second monthly premium, Smith informed the agent that Smith's wife was pregnant. At that time, the agent told Smith that the policy would not cover the expenses in connection with the pregnancy since the pregnancy had occurred before the application and issuance of the policy. No further premiums were paid on the policy, and the policy lapsed when the grace period expired. No claim for maternity benefits was made during the two months that the policy was in effect. A child was born to Smith and his wife approximately three months after the grace period expired. Smith never asked Southern Life to return the premium he had paid. The Smiths had coverage under the hospital, medical, and surgical expense policy for September and October 1982.
Smith was 20 years old at the time the application for the policy was taken. He had obtained his GED three years before this, and was employed as a roofer. Southern Life's agents were experienced insurance agents at the time the application was taken.
Southern Life first argues that reasonable or justifiable reliance, an essential element of actionable fraud, was not proven *79 with the requisite sufficiency to justify submitting this action to a jury.[1]
In Webb v. Renfrow, 453 So.2d 724, 727 (Ala.1984), this Court set out the basic requirements of a fraud action in Alabama:
"Actionable fraud in Alabama consists of (1) a false representation, (2) concerning a material existing fact, (3) reliance by plaintiff upon that false representation, and (4) damage to plaintiff as a proximate result."
Our decisions have held that the third element of actionable fraud, reliance, must be a reasonable reliance and that where a party has reason to doubt the truth of a representation before he acts, he has no right to act thereon. MJM, Inc. v. Casualty Indemnity Exchange, 481 So.2d 1136 (Ala.1985).
Justice Beatty, writing for a division of this Court in Halbrooks v. Jackson, 495 So.2d 591, 592 (Ala.1986) wrote:
"Our decisions clearly establish that a reliance upon a representation must be reasonable, and that when one has reason to doubt the truth of the representation made to him, or is informed of the truth before he acts, that party has no right to act upon the representation. Midstate Homes, Inc. v. Holt, 52 Ala. App. 415, 293 So.2d 476 (1974). Moreover, knowledge of facts which ought to excite inquiry and which, if pursued, would lead to knowledge of other facts, operates as notice of the other facts. Williams v. Dan River Mills, Inc., 286 Ala. 703, 246 So.2d 431 (1971). See also Bedwell Lumber Co. v. T & T Corp., 386 So.2d 413 (Ala.1980), and Mahoney v. Forsman, 437 So.2d 1030 (Ala.1983)."
There have been many cases in which this Court has reached the conclusion that the alleged reliance of the plaintiff was not reasonable under the circumstances, or that the circumstances were such that the representation should have aroused suspicion as to its validity in the mind of a reasonable person. Under such circumstances, if a reasonably prudent person exercising ordinary care should have discovered the facts, the plaintiff was not allowed to recover, as a matter of law. First National Bank of Mobile v. Horner, 494 So. 2d 419 (Ala.1986); Kilpatrick v. Citibanc of Alabama/Andalusia, 494 So.2d 39 (Ala. 1986); Rich Crest Homes v. Vaughn Place, Inc., 485 So.2d 1123 (Ala.1986); Holman v. Joe Steele Realty, Inc., 485 So.2d 1142 (Ala.1986); Taylor v. Moorman Mfg. Co., 475 So.2d 1187 (Ala.1985); Torres v. State Farm Fire & Cas. Co., 438 So.2d 757 (Ala.1983). See also Cook v. Brown, 393 So.2d 1016 (Ala.Civ.App.1981).
From Smith's testimony, it is obvious that he had a concern as to whether he could obtain hospital insurance that would cover the existing pregnancy of his wife. Smith says that he mentioned to the agents on the day the application was taken his suspicion that his wife was pregnant, and specifically asked them whether her pregnancy would be covered. Smith and his wife both testified that they saw the agents the day after the application was taken and asked whether the policy would cover her existing pregnancy. At that time, Smith had paid a $52.45 premium. No policy had been issued. There was no document that he could review to answer his question. Smith had previously obtained a disability policy from one of the same Southern Life agents with whom he was dealing. Smith was receiving disability payments under that policy at the time he applied for the hospital, medical, and surgical expense policy. There is evidence that Smith asked the person who should know, his insurance man (his "policy man"), if a certain risk was covered under a policy to be issued. It was a question of fact for the jury as to whether Smith's reliance at that time on the Southern Life agent's representation was reasonable. There is a scintilla of evidence of each element of actionable fraud.
Southern Life contends that Smith had no right to rely on the representations after the policy was delivered to him. We agree. On September 9, 1982, when the *80 policy was delivered, the Smiths were still concerned about whether the policy would cover Mrs. Smith's existing pregnancy. They asked the agents and were informed that it would. However, at that time the policy was available for Smith to examine. The first page of the policy showed that it provided "LIMITED BENEFIT HOSPITAL, MEDICAL, SURGICAL EXPENSE COVERAGE." The "MATERNITY BENEFITS" provision, which is set out in this opinion, was on the second page and clearly showed when maternity benefits would begin. There is nothing in the record to show that Smith could not have understood this language. There was nothing to keep Smith from reading the policy. He could have received a refund of all premiums if he had surrendered the policy within 10 days after the delivery of the policy. Smith's reliance on the agents' oral statement at the time the policy was delivered to him was not reasonable, as a matter of law. First National Bank of Mobile v. Horner, supra; Kilpatrick v. Citibanc of Alabama/Andalusia, supra; Rich Crest Homes v. Vaughn Place, Inc., supra; Holman v. Joe Steele Realty, Inc., supra; Taylor v. Moorman Mfg. Co., supra; Torres v. State Farm Fire & Cas. Co., supra.
However, this does not negate the fact that if Smith was damaged by the fraud there was a scintilla of evidence that actionable fraud had been committed by Southern Life on August 12 and 13.
Southern Life next contends that there was no evidence of the fourth element of actionable fraud, damage resulting from the misrepresentation. Smith allowed the policy to lapse. No hospital, medical, or surgical expense was incurred by Smith or his wife while the policy was in effect; and, therefore, no claim was made by Smith or his wife under the policy, and thus no claim was denied by Southern Life. There was some evidence of damage, though that damage may have been de minimis. Smith lost the use of $52.54 from August 12, 1982, to September 9, 1982. The trial court did not err in submitting the case to the jury or in denying Southern Life's motion for J.N.O.V. on the insufficiency of the evidence ground.
Southern Life contends that the following argument by Smith's counsel was improper and so highly inflammatory and prejudicial as to require a reversal:
"A corporation, like I said, is a legal entity ..., but it's not a human being. It has no conscience.
"The only way you can punish a corporation is through monetary damages."
In Gordon v. Nall, 379 So.2d 585, 587 (Ala.1980), Justice Maddox wrote:
"It has long been the law of this state that references to a corporate entity as `soulless' in arguments to the jury are `objectionable' and `prejudicial'."
In Gordon v. Nall, plaintiffs' counsel argued: "It [an insurance company] doesn't have a heart, it doesn't have a soul, it has a board of directors." The trial court overruled the defendant's objection to this argument. This Court reversed and remanded, stating that the argument served no purpose but to inflame the jury and prejudice the party that happened to be a corporation, and that this Court could not, "in good conscience, conclude that the improper argument did not affect prejudicially the rights of the corporation to a fair and impartial trial."
In Chrysler Corp. v. Hassell, 291 Ala. 267, 280 So.2d 102 (1973), the plaintiff's closing argument included the following:
"A corporation has no heart, it has no soul. It has got no fear of Hell and Damnation in the hereafter."
The defendants objected, and the trial court sustained the objection. On unrelated grounds, this Court reversed. The Court did address the improper argument issue, however. We wrote:
"This argument was improper, highly prejudicial and was not relevant to any issues in the case. A corporation is entitled to fair and equal treatment if it is a party to litigation. In Commercial Fire Ins. Co. v. Allen, 80 Ala. 571, 1 So. 202, this court, per Stone, C.J., held that a reference to the defendant as "this soulless corporation" in concluding argument *81 of counsel was `objectionable, and the court erred in not arresting that line of argument, when thereto requested.'
"The language of Gardner, C.J., in F.W. Woolworth Co. v. Erickson, 221 Ala. 5, 127 So. 534, is applicable here:
"* * * One of the highest functions of our courts, organized as they are for the fair and impartial administration of justice, is `to prevent, as far as possible, all improper, extraneous influences from finding their way into the jury box.' Metropolitan Life Ins. Co. v. Carter, 212 Ala. 212, 102 So. 130.
"A corporation in its relations to the public is represented and can act only through its duly authorized servants, agents or employees. Alabama Music Co. v. Nelson, 282 Ala. 517, 213 So.2d 250; United States Fire Ins. Co. v. Hodges, 275 Ala. 243, 154 So.2d 3. It is axiomatic that any act of commission or omission by a corporation is performed by human beings.
"Our discussion of the point of argument of counsel is designed for guidance in the event of another trial."
291 Ala. at 273, 280 So.2d at 106-07.
Certainly the argument in the present case that a corporation has no "conscience" is as improper, as highly prejudicial, and as irrelevant to the issues in the case as was an argument that a corporation does not have a heart or a soul or fear of "Hell and Damnation in the hereafter." "Conscience" is defined in the American Heritage Dictionary of the English Language (1969) as "[t]he faculty of recognizing the distinction between right and wrong in regard to one's own conduct."
In the case at issue, Smith's argument was improper, highly prejudicial, and irrelevant to the issues and would have required us to reverse and remand if Southern Life's objection had been overruled.
However, the trial court sustained Southern Life's objection. Southern Life moved for a mistrial. The trial court denied the motion and offered to give the jury curative instructions. This was waived by Southern Life. The record shows no other action in regard to this "improper and highly prejudicial" argument.
One ground in the motion for a new trial was the failure of the trial court to grant Southern Life's motion for a mistrial. This was overruled.
Unless there is an adverse ruling by the trial court, improper argument of counsel is not ground for new trial and is not the subject of review on appeal. An exception is made where it can be shown that counsel's remarks were so grossly improper and highly prejudicial as to be beyond corrective action by the trial court. Alabama Power Co. v. Henderson, 342 So.2d 323, 327 (Ala.1976); Hill v. Sherwood, 488 So.2d 1357, 1359 (Ala.1986).
Seldom are the remarks held to be beyond corrective action by the trial court. See Hill v. Sherwood, supra (a judgment against defendant would bankrupt him and ruin his career); Harrison v. Woodley Square Apartments, Ltd., 421 So.2d 101 (Ala.1982) (an incorrect statement that plaintiff had been hospitalized for an overdose of cocaine); Alabama Power Co. v. Henderson, supra ("You be the billing department, and for once you send [your] bill to the Power Company and make them pay for this human being that they have virtually destroyed"). In McLemore v. International Union, United Auto., Aircraft and Agr. Implement Workers of America, C.I.O., 264 Ala. 538, 88 So.2d 170 (1956), this Court affirmed the trial court's grant of a new trial due to a blatant appeal to racial bias by an attorney in closing argument. We are of the opinion that the effect of the closing argument in the case at issue was more like that in Hill v. Sherwood; Harrison v. Woodley Square Apartments, Ltd.; and Alabama Power Co. v. Henderson, than like the argument in McLemore. Smith's counsel could have been chastised by the trial court in the presence of the jury for trying to prejudice the jury. The trial court could have explained to the jury that an act of commission or omission by a corporation is performed by human beings, who should have the faculty for recognizing the distinction between right and wrong in regard to their *82 conduct. The trial court could have then instructed the jury to disregard the prejudicial remark made by Smith's attorney, and asked if any member of the jury could not disregard that prejudicial remark. We are persuaded that such corrective action would have offset the effect of the prejudicial remark. The trial court offered to give some type of curative instruction in response to Southern Life's motion for a mistrial. Southern Life waived this.
We cannot hold that the trial court's denial of the motion for new trial on this ground was unjust and plainly erroneous. Harrison v. Woodley Square Apartments, Ltd., supra; Estis Trucking Co. v. Hammond, 387 So.2d 768 (Ala.1980).
Southern Life's remaining issues involve the punitive damages aspect of the case. The jury awarded $35,000 in punitive damages. There was some evidence from which the jury could logically infer that the misrepresentations, which the jury found that agents of Southern Life made, were made with the intent to deceive. Therefore, under the law as it existed at the time this case was filed and tried, this was sufficient evidence to uphold an award of punitive damages. American Honda Motor Co. v. Boyd, 475 So.2d 835 (Ala.1985), Allstate Enterprises, Inc. v. Alexander, 484 So.2d 375 (Ala.1985).
Southern Life, in a most scholarly manner, argues that the punitive damages award is an excessive fine and is unconstitutional under the Eighth Amendment to the Constitution of the United States. This was not raised in the pleadings or the pre-trial order, nor was there an objection on this ground to the trial court's instructions on punitive damages. This issue was raised for the first time in a post-trial "motion for judgment notwithstanding the verdict or in the alternative for a new trial." We will not review questions that were not timely raised in the court below. Cooper v. Green, 359 So.2d 377, 378-79 (Ala.1978).
Damages are excessive if they shock the judicial conscience or are so great as to indicate bias, passion, or prejudice. Village Toyota Co. v. Stewart, 433 So.2d 1150 (Ala.1983). The punitive damages do not appear to be excessive under either standard. The facts were in dispute. The jury resolved this dispute in favor of Smith. While the harm that occurred in this case was slight, the harm likely to result from selling insurance coverage that will not be provided is great. Such conduct is reprehensible. It should be punished and deterred, and we cannot say that $35,000 is excessive.
The trial court entered the following order:
"The Court finds that the compensatory damages of $30,000 awarded by the jury is unsupported by any evidence introduced during the trial of this case. Ordinarily, compensatory damages involving an insurance policy consist of the benefits due under the policy. The Plaintiff introduced medical and hospital bills evidencing the total amount of expenses incurred in connection with the birth of Plaintiff's child. This sum was approximately $21,200.00. The Court finds, as a matter of law, that this is not the proper measure of compensatory damages. However, evidence was introduced by the Plaintiff and it is undisputed that one premium payment of $86.51 was made. This is the only amount of compensatory damages proven by Plaintiff. It is therefore, ORDERED, ADJUDGED and DECREED by the Court that the previous order of this Court dated September 2, 1986 is hereby amended and a remittitur is ORDERED by the Court on that portion of the compensatory damages award made by the jury from $30,000.00 to the amount of $86.51 plus interest at 12% from the date of judgment."
Smith accepted the remittitur, but cross-appealed after Southern Life appealed. We find no error in the action of the trial court in granting this remittitur.
AFFIRMED.
ALMON, BEATTY and ADAMS, JJ., concur.
MADDOX, J., concurs in the result.
*83 MADDOX, Justice (concurring in the result).
I concur in the affirmance of the judgment. While I am of the opinion that this Court could address the constitutional claims regarding the excessiveness of the verdict, even though presented here for the first time, and so stated my views in a dissenting opinion in Alabama Power Co. v. Cantrell, 507 So.2d 1295 (Ala.1986), I would still affirm this particular judgment, because I do not believe it is "excessive." Consequently, I concur in the result reached in this case.
NOTES
[1] The scintilla rule was the applicable sufficiency-of-evidence standard at the time this action was tried. Allstate Enterprises, Inc. v. Alexander, 484 So.2d 375 (Ala.1985).