ADAMS, Justice.
These consolidated appeals are from a judgment entered against the defendant, Cooper Chevrolet, Inc. Charles E. Chambers sued Cooper Chevrolet for fraud and misrepresentation arising from the sale of a used 1982 Chevrolet Malibu Classic automobile. The jury rendered a verdict in favor of Chambers, and judgment was entered in the amount of $150,000.00. Cooper Chevrolet appealed on several grounds. We affirm.
Chambers was interested in purchasing a 1982 Chevrolet Impala. He talked to two representatives of Cooper Chevrolet, Douglas Cooper and Neil Pierce. When they could not locate the type of car that Chambers had requested, Cooper and Pierce sug *914 gested a Chevrolet Malibu with a diesel engine that Pierce had personally used as a demonstrator for eight months.
In 1978, the diesel engines offered by GMC in its automobiles were a modification of the gasoline engine used in other automobiles it manufactured. Knowing that these modified diesel engines on passenger cars had had a large number of problems, Chambers asked Cooper and Pierce if the Malibu had a “modified diesel engine like the first vehicles had.” Chambers claimed that Cooper told him that this engine was a “true diesel” engine manufactured in a GMC plant. Cooper claimed that all he said was that this engine was not like the first diesel engines GMC produced in 1978.
Chambers also asked Pierce whether he had had any problems with the car. Pierce said that he had had no problems, that the car was in good condition, and that it got excellent fuel mileage. However, service records on the automobile indicated that it had been serviced on at least seven occasions, including twice to replace the alternator; once to replace the injection governor weight retainer assembly pumps; and once to repair relatively minor body damage from an accident.
After talking to Pierce and Cooper, Chambers took the car home overnight to test drive it, and soon thereafter he purchased the car. Almost immediately, Chambers began experiencing serious problems, including severe vibrations from the engine; a lack of acceleration or power; and a serious decrease in the fuel economy. In the four months that Chambers had the car, he had to bring the car in to Cooper Chevrolet for service on five or six occasions. Chambers claimed that the car’s performance never improved for more than one or two days after servicing and that then he would have additional problems.
Chambers was not satisfied with Cooper Chevrolet’s servicing, so he called GMC directly. GMC directed Chambers to a Tal-ladega dealership. Chambers brought the car to the Talladega dealership, who kept the car for three weeks and made some repairs. The car’s performance improved, but it was only two days until the same problems began recurring. Chambers brought the car in once again for repairs, but the dealership was too busy to handle the problem that day and asked him to come back. Chambers left, but never returned. Instead, he quit driving the car and subsequently filed this lawsuit.
This case went to trial and a jury verdict was rendered against Cooper Chevrolet; a judgment was entered against Cooper Chevrolet in the amount of $150,000.00. After trial, Cooper Chevrolet made a post-judgment motion to remit the jury verdict, or in the alternative, for a new trial or a judgment notwithstanding the verdict (JNOV). The motion was denied.
Cooper Chevrolet appealed, raising six issues. One issue raised by Cooper Chevrolet was that the trial court erred in denying its requested remittitur or, in the alternative, a new trial or a JNOV, because the jury’s general verdict against Cooper Chevrolet in the amount of $150,000.00 was excessive. After a careful consideration of the other issues, in light of the record and briefs, we conclude that that is the only issue having merit; therefore, we will limit our opinion accordingly.
Justifying the remittitur of a jury verdict is difficult, because the jury verdict is presumed to be correct. However, if the court determines that the verdict was a result of bias, prejudice, passion, or other improper motives, it can remit the verdict, grant a new trial, or grant a JNOV. Village Toyota Co. v. Stewart, 433 So.2d 1150, 1155 (Ala.1983). Nevertheless, “[t]he verdict of a jury should not be interfered with merely because in the opinion of the court the jury gave too little or too much; [furthermore], the authority vested in the courts to disturb a verdict of the jury on the ground of excessiveness is one which should be exercised with great caution.” Ford Motor Credit Co. v. Washington, 420 So.2d 14, 18 (Ala.1982) (citations omitted). On appeal, this Court will not reverse a trial court's decision regarding that verdict unless the verdict or the judgment is contrary to the preponderance of the credible evidence, contrary to law, the product of bias or passion, or the product of fraud *915 upon the court. Mobile Dodge, Inc. v. Alford, 487 So.2d 866, 871 (Ala.1986); Mobile Dodge, Inc. v. Waters, 404 So.2d 26 (Ala.1981).
Cooper Chevrolet’s argument is two-fold. First, it argues that the jury verdict was excessive because there was no evidence of anything other than an innocent misrepresentation regarding the engine in the Malibu. Second, Cooper Chevrolet cited several other cases involving fraud and misrepresentation and claimed that its alleged fraud and misrepresentation was much less serious than the fraud and misrepresentation in the cited cases. Based on the punitive damages awarded in those cases, Cooper Chevrolet asserts that the damages assessed against it should not exceed $35,-000.00. We disagree.
The testimony would support a finding that Chambers asked if the Malibu engine was a modified gasoline engine “like the first [passenger cars] had,” or a “true diesel engine,” and that Pierce responded to the question by stating that it was “not an engine like the first vehicles had.” This response is not disputed. The evidence would also support a finding that Pierce said it was a “true diesel engine,” although Cooper Chevrolet denied such a statement was made. The trial testimony indicated that the diesel engine in the Malibu was of a model that had been updated since the 1978 models had been introduced. On that basis, Cooper Chevrolet says, in effect, that it construed Chamber’s question and its answer absolutely literally: He asked if the engine was like the first vehicles had, we said that it was not like the first vehicles had, which was a true statement because the 1982 engine had been modified even more than the 1978 version.
Chambers disagreed with this construction of the conversation. Although the engine had been updated, it was still a modification of the gasoline engine rather than a “true diesel” engine. He claimed that Pierce knew that he was not asking the literal question, “Is this engine precisely the same engine that was manufactured and installed in the 1978 GMC cars?,” but was saying, “I know GMC has had many problems with a modified gas engine in the past. Is this a true diesel engine, or a modified gas engine?”
There was sufficient credible evidence for the jury to conclude that Pierce, as a representative of Cooper Chevrolet, knew that the GMC “diesel engines” had had some serious problems. Furthermore, there was sufficient credible evidence to support a jury finding that Pierce knew that if he had said that the engine was an updated and “modified” version of the original 1978 modified gasoline engine, Chambers probably would not have bought the vehicle. Pierce may have chosen his language carefully, but even if the jury believed his version of his answer, it nevertheless could have found that he had the intent to defraud Chambers; Cooper Chevrolet should not be released from liability for fraud simply because Pierce’s literal statement was accurate. We conclude that there was sufficient evidence for the jury to find that this was not an “innocent” misrepresentation.
Cooper Chevrolet also asserts as a ground for reversal that the punitive damages award was excessive in light of the other automobile fraud cases in which punitive damages were awarded. For instance, in Alford, 487 So.2d 866, an automobile dealer represented to a buyer that the car he was selling at the retail price had never been wrecked and was in “excellent condition.” In fact, the car had been wrecked and rebuilt from other stolen and wrecked vehicles and was substantially defective. The court awarded the buyer $125,000.00 in punitive damages, partially because the car was so defective that it was dangerous.
In American Honda Motor Co. v. Boyd, 475 So.2d 835 (Ala.1985), the trial court awarded damages in the amount of $65,-000.00 against a new car distributor who knowingly and intentionally suppressed the fact that the car it was selling as “new” had suffered major damage in transit and had been repaired. Finally, in Village Toyota, supra, the court awarded punitive damages in the amount of $50,000.00 because the dealer fraudulently charged the buyer twice for the same option.
*916 As previously discussed, there was sufficient evidence before the jury for it to conclude that Pierce knowingly made a false representation to Chambers in an effort to persuade him to purchase the Malibu. Determining the “seriousness” of a particular fraud or misrepresentation and the punishment necessary to deter that party and others from conducting themselves in a similar manner in the future is a discretionary matter that should be left to the factfinder. There is no need for this Court to judge whether one act of fraud was any less or more blameworthy than another, because the $150,000.00 general verdict was not so excessive that it went against the great weight and preponderance of the evidence, nor does it appear that it was the product of bias, passion, prejudice, or other improper motive.
Finding no error, we affirm the judgment of the trial court.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and STEAGALL, JJ., concur.